91 U.S. 596
 23 L.Ed. 332
 WOODRUFF ET AL.
v.
HOUGH ET AL.
 October Term, 1875
 
 ERROR to the Circuit Court of the United States for the Northern District of Illinois.
 On the 5th of July, 1871, a contract was entered into between John Allen and the Board of Supervisors of Winnebago County, Ill., for the erection of a county jail, according to certain plans and specifications; the work to be done under the control of a building committee, which should have the right to make changes in the materials or construction of the building upon giving reasonable notice thereof. The contract also provided that all materials used and work done should be subject to the approval of a superintendent appointed by the supervisors; and if at any time, in his judgment, the work or materials were not in accordance with the requirements of the contract, he should have power to stop the work until the difference should be adjusted by arbitration.
 On the 18th of the same month, Allen made a contract with the defendants in error, who were the plaintiffs below, whereby they agreed to 'furnish the material, manufacture, deliver, and erect in its proper position, all the wrought-iron work' for the jail, according to certain plans and specifications mentioned in his contract with the supervisors. It set forth the terms of payment by him, and a provision for an increase or decrease in cost occasioned by any changes in the materials or in the construction of the iron-work which might be made by the building committee.
 The plaintiffs in error entered into a written guaranty with the defendants in error for the faithful performance by Allen of his agreement.
 During the progress of the work, differences arose between Allen and his sub-contractors, growing out of the refusal of the supervisors to accept the work furnished by the latter, on the ground that it was not in compliance with the specifications of his contract with the supervisors and with defendants in error. After much of the work was done and put in place, it was condemned, and the work abandoned by defendants in error, who brought this suit against Allen's sureties for his failure to pay as they had guarantied he would.
 The defendants below asked the court to instruct the jury, that if it appeared from the evidence that the plaintiffs had abandoned their contract with Allen before its entire completion, and after only a partial performance, they could not recover in an action on the special contract.
 That even if it appeared from the evidence that the plaintiffs, after commencing work under their said contract, had been improperly obstructed in or prevented from the performance of the same, they could not maintain an action on the special contract sued on without proving a tender to Allen of the balance of the work required to be done by them by their said contract with him.
 That if it appeared from the evidence that the payments actually made to the plaintiffs by Allen, added to the amounts required to be paid by him, under a subsequent contract with a third party for a completion of the wrought-iron work (if such contract was the most economical one that he, under the circumstances, could make for the completion of said work after the same was abandoned by the plaintiffs), equalled or exceeded the whole price at which the work was to be done by the plaintiffs, then there could be no recovery.
 That the defendants, being mere sureties upon a special written contract, were not necessarily liable, even though an action might be sustained against Allen.
 That, under the facts as disclosed by the evidence, no action was sustainable upon the written contracts mentioned in the declaration, but that the plaintiffs' remedy was limited to an action upon an implied contract on the part of Allen to pay for the value of such work as had been retained by him, after it was furnished by the plaintiffs in alleged partial performance of their contract.
 That the defendants were not liable upon their guaranty, if the plaintiffs were not entitled to recover upon their written contract with Allen.
 But the court refused to so charge the jury, and thereupon gave its charge substantially as follows:——
 To fully understand the obligations and liabilities of the parties, it is necessary to ascertain definitely the duties and obligations which plaintiffs and Allen had respectively assumed under their contract of July 18. The contract recites in substance that Allen had entered into a contract with Winnebago County to build and complete a jail at Rockford, according to certain plans and specifications.
 The plaintiffs agreed to furnish the material for, manufacture and deliver, and erect in its proper position, all the wrought-iron work for said jail mentioned, and provided for in said plans and specifications under the caption of 'Specifications for wrought-iron work.'
 These specifications, it will thus be seen, are an important element in the contract between Allen and plaintiffs; and it is only by reference to them that we are able to ascertain definitely what plaintiffs agreed to do.
 The first requisite as to the character of the wrought-iron work is, that it is all to be made of the best quality Lake Superior iron, unless otherwise ordered in writing by the superintendent.
 The plaintiffs claim that they proceeded, according to the terms of their agreement, to provide the materials and manufacture the iron-work required substantially in the manner called for, and had proceeded to put the iron lining and five of the window-frames in place, and were ready to proceed to put the open-work partition, and cell-doors, and other parts of the work, in place, when they were stopped by Allen and the building committee.
 The defendants, besides interposing several technical, or rather legal defences, arising out of what they claim to be the law of the case on the admitted facts, insist that the work brought upon the ground and offered to be put in place did not conform to the plans and specifications, and that the same was therefore rightfully rejected.
 It is admitted that the lining furnished by plaintiffs has been built into the wall since they were stopped in the performance of their contract, and has become apparently a part of the structure, without objections from the superintendent or building committee.
 It is conceded on the part of the plaintiffs, that, in several important particulars, this work is not in accordance with the specifications; but it is also insisted that a literal compliance with the specifications and plans in those respects is practically impossible; and they are, therefore, excused in the premises.
 For want of conformity to the specifications, and by reason of the imperfection in workmanship, Allen claimed the right to reject the work tendered by plaintiffs; and it becomes your duty to determine, under the law and the evidence, how far he was right in so doing.
 As to the provision requiring all the iron-work to be made 'of best quality Lake Superior iron,' it is for you to say, as a matter of fact, from the evidence, whether it was possible for the plaintiff to have literally complied with this condition, or whether, by using iron made partly from Lake Superior ores, this condition has been substantially complied with. Conditions of this nature in contracts or specifications must be construed in the light of practical affairs; and if you find from the evidence that there was no such distinctive article as 'Lake Superior iron' known to persons engaged in the iron trade, then you will be justified in assuming that the parties in using the term really meant and intended to describe iron manufactured partly from Lake Superior ores; and, if the plaintiffs used such iron, they have so far complied with their contract.
 In connection with this branch of the case, and as throwing some light upon the construction the parties intended to put upon the term used to describe the material, I call your attention to the fact, that there is no proof that any objection was made to the material or kind of iron employed, with the exception of the lining-plates.
 As for failure to use the kind of plates and T iron bars in the iron lining called for by the specifications, the plaintiffs mainly depend upon the consent of Allen and the building committee to accept the building as made, rather than upon their right to insist that they have complied in that regard with the specifications.
 If you find from the evidence that they did so agree, then the work as made should be deemed by you to have been substituted by agreement of parties for that described in the specifications; the jury taking into consideration, in fixing the value of the work as made, any imperfections in the workmanship, and the work yet remaining to be done at the time it was abandoned by plaintiffs.
 In other words, the jury are to determine from the evidence the value of the lining to Allen for the purpose of completing his contract as plaintiffs left it.
 Having heard the testimony in relation to the open-work partition, and had the plans shown and explained to you, it is for you to say, under the proof, whether this part of the work complied with the contract. If it did not, then Allen was not bound to accept it, and had the right to forbid plaintiffs from putting it up.
 A word here in regard to the degree of perfection to which work of this character must be carried to comply with the drawings and plans. There should always be a substantial compliance with the model. In all essential particulars, the thing represented must be produced and come as near to the standard as the state of the act will allow. The plaintiffs' contract binds them to this, and they should not have undertaken the task if they had not the skill or means to accomplish it.
 So in regard to the cell-doors, window-frames, and gratings. If the testimony satisfies you that these portions of the work were made substantially as required in the drawings, and that, if the doors are too large for the openings left to receive them, it is due either to the mistake of the mason or to a mistake in the scale on which the drawings were made, then plaintiffs ought not to suffer, and should recover for the value of the window-frames put in place, and also for the value of that ready to be put in place, if it was made in conformity with the drawings, but subject to this reservation.
 The contract was an entirety; and the plaintiffs had no right to put in the window-frames, cell-doors, &c., even if they complied in all respects with the drawings and specifications, if they at the same time insisted on putting in the partition also, which did not conform to the plans.
 If you believe from the evidence that the plaintiffs insisted on putting in a partition which was not made according to the plans, then they cannot recover for the doors and window-frames not put up and used, even though they may be properly constructed.
 If you find from the evidence that the contract has been partially performed by the plaintiffs, and that they have been prevented from performing the remainder of the work by Allen, and that he has adopted or used a portion of the work, then it will be your duty to ascertain from the evidence the value of the work thus done and appropriated, and the plaintiffs will be entitled to recover the value so found as damages: but you should also deduct from the amount thus found any sums due from plaintiffs to Allen for advances made by him on their account; also any damages which Allen has sustained by reason of the non-performance of said contract between plaintiffs and himself, provided you believe there was any breach of contract which entitles Allen to damages; and, in estimating Allen's damages, you must be governed by the evidence in the case, applying it in the same manner as you would do if Allen had not a suit for damages on said contract.
 Thereupon the jury gave their verdict in favor of the plaintiffs for $5,000 damages, and judgment was rendered therefor.
 The defendants having excepted to the refusal of the court to charge the jury as requested, and also to the charge as given, sued out this writ of error.
 Mr. H. K. Whiton for the plaintiffs in error, and Mr. John N. Jewett for the defendants in error.
 Mr. JUSTICE MILLER delivered the opinion of the court.
 
 
 1
 The errors assigned relate to the charge of the court, and the refusal to charge as requested by plaintiffs in error.
 
 
 2
 The main ground of error seems to be, that the court did not treat Hough & Butler, the sub-contractors under Allen, as bound by all Allen's contract with the supervisors. But, while they accepted the specifications for the wrought-iron work which were in Allen's contract with the supervisors, they did not agree to be bound by the supervisors' acts in accepting or rejecting the work as coming up to these specifications.
 
 
 3
 This Allen did in his contract with them; and no doubt this has led to the present controversy. The supervisors reserved the right to decide as between them and Allen whether the work conformed to the specifications. Allen reserved no such power in his contract with defendants. These latter had a right, in the event of a difference on that subject, to have the difference settled by a court of law; and Allen ran that risk if he rejected any of their work. But the supervisors could reject work without such hazard, because Allen had agreed to submit to their judgment in case of such a difference.
 
 
 4
 The plaintiffs desired to have the court give the jury a more specific construction of the contract than it did as to the kind of work required, and also as to the failure of defendants in error to perform the work as so construed.
 
 
 5
 The court repeated the details of the contract on the points where the failure was alleged, and then told the jury, that unless the contractors had complied substantially with these specifications, or a strict compliance therewith had been waived, they could not recover. The charge was very full, and covered the whole ground necessary to enable the jury to apply the law to the matters in issue. We do not find in it any error The fact that Allen will, under the judgment recovered by defendants in error, taken in connection with the amount he has had to pay to others to complete the wrought-iron work, be a loser to the amount of several thousand dollars, does not prove the instructions of the court to be wrong. If there was any error, it was committed by the jury, and not by the court. It is only another one of those cases, so common from that circuit, in which, with the whole charge of the court and much of the testimony in the bill of exceptions, this court is expected to retry the case as if it were both court and jury. Our repeated refusal to do this will be adhered to, however counsel may continue to press on our attention the mistakes of juries. They are beyond our jurisdiction.
 
 
 6
 Judgment affirmed.