## Case No. 8,197.

LEE et al. v. NEW HAVEN, M. & W. R. CO.[1]

Circuit Court, D. Connecticut. July 31, 1877.

ASSUMPSIT—CONTRACT—PLEADING—AMENDMENT—JOINDER OF CAUSES—CONTRACT—INTERPRETATION—RAILROAD CONSTRUCTION—EVIDENCE—INSTRUCTIONS—TRIAL—CROSS-EXAMINATION—EVIDENCE—CONTRACTS—DEFAULT IN PAYMENT.

1. A railroad construction contract under seal required the completion of the work at a fixed date to the satisfaction of the company, and provided for monthly payments as the work progressed. The work was not finished in the required time, and the monthly payments were not made. Finally the company notified the contractors that they had failed to comply with the contract, and that the same was thereby rescinded. But all the work done had in fact been accepted by the officers of the company. *Held,* that the contractors could maintain an action of indebitatus assumpsit for all the work done.

2. Under the Connecticut statute of amendments, which is practically adopted by the rules of the federal circuit court, plaintiffs were entitled to amend their declaration by adding a special count in covenant.

---

1 [Not previously reported.]

3. In a railroad construction contract, an agreement to do the work to the "full satisfaction" of the company does not of itself give the company power to arbitrarily rescind the contract, and means that the work must be done to its satisfaction, not unreasonably withheld.

4. A railroad construction contract provided that the work as it progressed was to be paid for in monthly installments "in bonds which are to be guarantied by the towns of Portland, Chatham, and Hebron, respectively, and, when these are used up, then in bonds to be guarantied by the town of Middletown." But, by the terms of the vote of Chatham, no bonds were to be guarantied until the work was completed. *Held* that, although this rendered the Chatham bonds unavailable for the monthly payments, it did not exempt the company from the duty of making the same, and, the bonds of Portland and Hebron being exhausted or unavailable, it was bound to pay in Middletown bonds.

5. The fact that by the votes of Portland, Hebron, and Middletown no bonds were to be guarantied by them until contracts had been let for the completion of the road "ready for travel" did not make it the duty of the contractors to do any work subsequent to track laying, the same not being included in the terms of the contract.

6. Other contracts for other parts of the road were let by the company about the same time, and the contract with plaintiffs obligated them to complete any work left unfinished by any other contractors on the same terms as provided for in the agreement of the defaulting contractors. *Held*, that this did not render plaintiffs insurers of the other contractors, and they were not bound to do any such unfinished work until notified of the default by the company.

7. Alleged error in the admission of testimony to the effect that it was the custom of railroad companies, in contracts for construction involving fills, to furnish "borrow pits," was rendered immaterial to defendant by a subsequent instruction that, under the contract, it was incumbent on the contractor to provide "borrow pits."

8. In the course of a cross-examination of the company's secretary, which was for the purpose of showing the active participation of defendants in efforts to prevent plaintiffs from receiving their pay, it was proper to allow a question as to whether witness did not recollect that after a specified date a "batch of suits" was brought against plaintiff wherein the company was garnished.

9. Under a contract which provides for the completion of certain work on a specified date, and for monthly payments as the work progresses, the contractor is justified in quitting work after default in such payments, and can recover for the value of the work actually done.

At Law. Action by John Lee & Son against the New Haven, Middletown & Willimantic Railroad Company to recover for work done under a construction contract. Heard on defendant's motion for a new trial.

Alvan P. Hyde, for plaintiffs.

Simeon E. Baldwin and Samuel L. Warner, for defendant.

SHIPMAN, District Judge. This is a motion for a new trial for alleged errors in the charge to the jury. The case is as follows:

Prior to November 1, 1871, the plaintiffs had been contractors for building a portion of the railroad of the defendant between Portland and Willimantic. Other contracts had also been entered into for constructing other sections of the road. The defendant had exhausted its funds, was unable to pay the contractors, and work had been consequently suspended. In this condition of affairs, the legislature of Connecticut, at its May session, 1871, authorized the various towns upon the line of that portion of the new road to guaranty the bonds of the railroad company. These towns, in the fall of 1871, passed sundry votes, which are hereafter referred to. By the aid of this guaranty the defendant hoped to be able to complete its road. It entered into a contract under seal with the plaintiffs dated November 1, 1871, which was, in substance, as follows: "The plaintiffs agreed to do to the full satisfaction of the chief engineer and board of directors of said company, and according to the plans and specifications of said road, all the unfinished work mentioned under the name of John Lee & Son, in the engineer's estimate annexed to said contract, including all the bridges, trestlework, masonry, grading ready for ties and rails, laying the ties and rails, and all other work therein specified, and to furnish the materials therefor, and to bring all the sections therein named up to grade, all for the price or sum of one hundred and seventy thousand nine hundred and fifty dollars ($170,950), the same to be paid in installments, as follows: At the end of each month, counting from the —— day of ——, on which day said work shall commence, there shall be made, by the chief engineer of said company, an estimate of the work which may have been done, and the materials delivered during the month; and the said John Lee & Son shall, within 10 days after the return of such estimate to the office of said company, be paid such proportion of said whole sum of $170,950, as the monthly estimate of work done bears to the whole work hereby contracted to be done by them; and so on, at the end of each month thereafter, until the whole work is completed. And such payments shall be made in bonds of said company at par, bearing interest at seven per cent. per annum, payable semiannually, and indorsed or guarantied by some one of the towns on the line of said road which have recently voted to so indorse or guaranty. All claims for damages for any cause whatever, which either party might have against the other, were canceled and waived, excepting an agreement for the payment of back claims of said John Lee, amounting to $42,500. The plaintiffs agreed to prosecute said work with all diligence, and to complete the same by the first day of May, A. D. eighteen hundred and seventy-two. And the company agreed to make payment of the several installments promptly, as they from time to time became due and payable. And it is further understood and agreed that the installments hereinbefore provided shall be paid to said John Lee & Sons in the bonds which are to be guarantied by the towns of Portland, Chatham, and Hebron, respectively; and when these are used up, then, if more are needed, in bonds to be indorsed or guarantied by the

town of Middletown. And whereas, certain agreements have this day been made by and between the said railroad company on the one part, and certain other contractors, respectively, on the other part, whereby said contractors have agreed to do and perform certain other work on said road, as in their said agreements, respectively, mentioned, for the completion of the whole road ready for ties and rails, and to supply certain materials therefor: Now, the said John Lee & Son have further agreed, and hereby do agree, to do and perform any and all work which said contractors may fail to perform, and to supply all materials which they may fail to supply on said road, and at the same prices or sums, or the pro rata thereof, and upon the same terms and conditions, as they have respectively agreed upon, and have the same completed within the same time, and take their pay in the same kind of bonds which they agreed to take; and, further, they will accept, and hereby do accept, as correct and true, all the estimates of the work and materials so to be done and supplied by said contractors, which estimates are annexed to their respective contracts, and also the estimates hereto annexed of the work and materials to be done and supplied by said John Lee & Son under this their own contract hereto annexed, whether such estimates shall turn out to be correct or not. And it is further agreed that, if any installment shall be due and unpaid to any contractor at the time said John Lee & Son shall undertake to complete such contractor's abandoned work, it shall belong to and be paid to said John Lee & Son, provided they complete such work."

Sundry contracts, dated November 1, 1871, were entered into by the defendant with other contractors, severally, for the completion up to grade, ready for ties, by April 1, 1872, for definite sums, of sundry sections of the road other than those named in the plaintiffs' contract, and constituting in the aggregate all the sections not therein named, east of Middletown. These other contracts are substantially like the plaintiffs' contract, mutatis mutandis, except that they do not provide for completing unfinished work of other contractors. Prior to November 1, 1871, the towns of Middletown, Portland, Chatham, and Hebron, respectively, voted to guaranty the bonds of the defendant to the following amounts, respectively: $300,000, $102,000, $40,000, and $28,000. The terms of said votes were known by the plaintiffs when said contract was made. The votes of Middletown and Portland provided that no bonds should be guarantied, except for work actually done, and materials to be furnished the company after the date of the votes, and for interest absolutely necessary to be paid to keep possession of the road, and that no bonds should be guarantied until all contracts were entered into for the entire completion, for definite sums, of the road, ready for running cars, between Middletown and Willimantic, except for said

interest. The Hebron vote provided that bonds were not to be guarantied for interest until the road was completed. Chatham voted to guaranty bonds to be used in the completion of said road on and after such times as it shall have been graded, the track laid permanently, and cars shall have passed over the road from New Haven to the village of East Hampton. The plaintiffs subsequently entered into a contract with B. Richardson for rails, fish plates, switches, frogs, depots, and for all the ballasting of the road, and otherwise for its completion ready for the running of cars thereon, for definite sums to be paid said Richardson. Under the plaintiffs' contract, work was done and materials furnished with reasonable dispatch until the month of August, 1872, when, in consequence of the inability of the defendant to pay according to the terms of the contract, work was suspended until December 15, 1872, when it was resumed by agreement between the parties, a partial payment having been made in an order for $10,700 in bonds, agreed to be bought of the plaintiffs, and bought for $10,000 in cash, and the plaintiffs promising to go on with the work in pursuance of the contract. Work was continued until April 10, 1873, when by a vote of the directors of the company, passed April 8, 1873, the plaintiffs were notified that the company considered that they had failed to carry out their contract in letter and spirit, and that the contract was at an end, and that the work would be completed by the defendant, which was accordingly done. The plaintiffs thereupon, on April 11, 1873, brought their action of general assumpsit, to recover for the sums claimed to be due to them for the value of the work and of the extra work which had been done by them for the defendant. Monthly estimates of the work done by plaintiffs were regularly made down to April 10, 1873, by the chief engineer, and the amounts of such estimates were credited to the plaintiffs on the books of said company. Prior to August, 1872, the plaintiffs were paid by the defendant either in bonds of Portland or of Middletown. The bonds of Hebron and Chatham were not then ready to be delivered, as the condition precedent to the guaranty had not occurred. All the bonds which Middletown and Portland had agreed to guaranty had been issued and disposed of prior to December 15, 1872. The sums which were estimated as due to the plaintiffs in January and February, 1873, were paid to the plaintiffs by orders for bonds drawn by said company on some one of the towns which had agreed to guaranty when the conditions of their votes were complied with. These orders, when given, were bought of the plaintiffs by one of the officers of the company at the time the orders were given, as the plaintiffs would not take orders for bonds unless they could turn them into money forthwith. No payments were made upon the estimates of the plaintiffs' work for March and April, 1873. Prior

to March 10, 1873, the defendant had so far disposed of all the bonds which were to be guarantied by the several towns which had voted to guaranty bonds of said company that the defendant had not reserved enough of said bonds to pay the plaintiffs if they should complete the contract. On April 8, 1873, the plaintiffs had not completed all the work called for by their contract. Cars had passed over the road from New Haven to East Hampton prior to April 8, 1873, but the road was not entirely graded, or the track laid permanently, between Middletown and East Hampton, nor did any trains run between said points until some time after the month of April. The plaintiffs were not called upon to do any work of negligent or defaulting contractors, or notified of any deficiency in the work of the other contractors, except the jobs mentioned in the bill of particulars.

The defendant, upon the trial, denied that anything was due upon the contract, or for extra work, and claimed that, if anything was due, the sum was reduced to nothing by the damages to which it had been subjected by the plaintiffs' noncompliance with the contract, which noncompliance compelled a rescission of the contract, and introduced evidence tending to show that, after the work was resumed under the agreement to that effect, of December 15, 1872, the plaintiffs proceeded with intentional and causeless delays, and did their work poorly, and caused great damage by the inefficient manner and slowness with which the work was conducted. The plaintiffs had a conversation with a majority of the directors of the company, on March 10, 1873, in which they asserted that they should stop work unless they got their pay, and did stop work. The plaintiffs admitted this conversation and stoppage, gave evidence tending to show that work was resumed after the suspension of about a day, and that the proposed abandonment was because they had not been paid, and that they had not been paid, and that it was impossible for the company to make any payment, which fact the plaintiffs then knew, and that after they resumed they proceeded with dispatch. They also offered evidence to show that the plaintiffs always worked with dispatch, that the delays were caused by the laches of the defendant, and that the work was duly accepted by the chief engineer and directors of the company, monthly, as it progressed; that the rescission of the contract was improperly and unfairly made, and with intent to benefit, pecuniarily, certain officers of the company. The defendant introduced Robert G. Pike, who was formerly secretary of the company. Upon cross-examination,—the general object of this part of the cross-examination being to show that the company intentionally placed hindrances in the way of the plaintiffs receiving their pay, and also for the purpose of showing that the plaintiffs resumed work after said conversation with the directors, in March, 1873,—the witness was asked by the plaintiffs' counsel, "Do you not recollect that subsequent to the estimate of March 15, 1872, a batch of suits was brought against Lee, and served upon you, by which the company was garnished?" To this question the defendant objected, on the ground that it called for what should be proved by the records of the courts to which such actions, if any, were brought. But the court admitted the question, and the witness replied, "I have a memorandum of ten suits brought March 25, 1872," and read his memorandum. To the admission of this testimony the defendant duly excepted. J. F. Fielder testified for the defendant, and stated that he had been a railroad contractor for 40 years. On cross-examination, he was asked if it was not the universal custom of railroad companies, which had made construction contracts involving fills by contractors, to furnish the latter with necessary borrow pits, when the contract was silent as to which party should furnish them. To this question the defendant objected, as seeking to vary the contract in suit by parol, but the court admitted it, and the witness answered in the affirmative, to which ruling the defendant's counsel then and there excepted. The court subsequently charged the jury that, under the contract, the plaintiffs, and not the company, were bound to furnish all the earth and "borrow pits" necessary to make the fillings called for by the contract. On April 9, 1874, plaintiffs filed with the clerk a special count in covenant as an amendment to the original declaration, setting up the contract, alleging performance by the plaintiffs, a breach by the defendant, a readiness and willingness to complete the contract by the plaintiffs. A copy of the amendment was served on the defendant. By the statute of Connecticut, counts in assumpsit, debt, and covenant may be joined in the same declaration. Before evidence was taken, the defendant moved that the special count be stricken from the files, and for nothing had, but the court denied the motion, and allowed the count to stand as an amendment to the declaration.

The defendant requested the court to charge th jury as follows: "(1) The plaintiffs cannot recover for any work done or materials furnished under the contract of November 1, 1871, under the general or common counts in their declarations. If they can recover at all for any of said items, it must be under the second count, in which they undertake to set out the contract at length. (2) The plaintiffs agreed to perform their contract to the full satisfaction of the chief engineer and board of directors of the company, and were bound to prove affirmatively that they did so, or else that they were excused from so doing. It is, however, agreed that on April 8, 1873, the board of directors were dissatisfied with the manner in which the plain-

tiffs had performed the contract, and notified the plaintiffs to that effect, and that the directors, therefore, considered the contract as having been abandoned by the plaintiffs. This action on the part of the board, whether just or unjust to the plaintiffs, is conclusive against them, and your verdict must be for the defendant. (3) The contract between the parties to this suit, of November 1, 1871, is to be construed with reference to the several town votes, in just the same manner as if this law, and all the votes of the four towns named in the contract, had been set out at length in the body of the contract. Construed in this way, the contract did not require the company to deliver to the plaintiffs any guarantied bonds within ten days after any of the monthly estimates, unless prior to that time the conditions of making the guaranty, laid down in the votes of Portland, Chatham, or Hebron, had been fulfilled. No Middletown bonds were required to be furnished, until all those of the three other towns were issued and used up. (4) The bonds which the contract calls for, in the first instance, were to be of the following issues: Portland, $102,000; Chatham, $40,000; Hebron, $28,000; total, $170,000. The law is so that the defendant was not bound to furnish the plaintiffs with any Chatham bonds until the railroad was graded, the track laid permanently, and cars had passed over it from New Haven to East Hampton. As these conditions were not fulfilled until long after April, 1873, the defendant was not and is not in fault for not delivering, or having delivered, any bonds guarantied by Chatham to the plaintiffs. (5) As each of the town votes provided that no bonds should be guarantied, except for interest, until contracts should have been entered into for the entire completion, for definite sums, of the railroad, ready for running cars between Midletown and Willimantic, the contract in suit bound the plaintiffs, either directly, or by fulfilling the defaulted contracts, if any, of the other contractors, such as O'Connor, Edwards, and Dooley, to complete the railroad for the definite sums named in those contracts, ready for running cars between Middletown and Willimantic, including bringing the roadbed up to grade, as fixed by the profiles of the road then in the possession of the company. (6) They were bound not simply to do the work particularly specified in the specifications attached to the contract, but to do everything necessary to put the road in a proper shape for the running of cars, although the cost of so doing might greatly exceed the whole contract price, and although it might involve doing work of a kind not specifically estimated for. (7) If you find that ballasting the roadbed with gravel was necessary for that purpose, then the plaintiffs were bound to ballast it in that manner. (8) By the terms of its contract, the defendant was not obliged to notify the plaintiffs of any default of any other contractor. The contract of the plaintiffs was an original undertaking. They were to perfect the road for the formal acceptance of the engineer and board of directors, and without notice, and are answerable for any default under any of the contractors, in the same manner as upon the contract signed by them."

The court charged the jury that the plaintiffs, denying that the contract had been broken on their part, and asserting that it had been broken by the defendant, have brought their action of covenant to recover the money due to them upon the contracts, and also damages for such unauthorized abandonment, and have also joined counts in assumpsit to recover for the value of the work actually done, and the value of the extra work which was not embraced in the contract. If any extra work was done by the direction of the chief engineer and the directors, which was accepted and sanctioned by the engineer and directors, the plaintiffs can recover for so much as such extra work was reasonably worth under the common counts. And the court further charged, upon the question of recovery upon the counts in assumpsit, that, if work is not performed according to the contract (and it was manifest that the terms in regard to time had not been complied with), the work is not to be paid for at all, unless it has been sanctioned or accepted by the contracting party, in which case the sum which is reasonably due is the amount of payment, and the contract price is to be considered by the jury, and be an important element in determining what the work and labor is worth. When the contract has been in good faith fulfilled (until its further fulfillment has been prevented by the unauthorized act of the other party), but has not been fulfilled in the manner or not within the time prescribed by the contract, and the other party has sanctioned or accepted the work, the plaintiffs may recover upon the common counts in assumpsit. The converse of the proposition is true. In such case the defendant is entitled to recover for the damages it has sustained by the plaintiffs' deviation from the contract, both as to the manner and time of performance, not induced by the defendant. The work was to be done to the full satisfaction of the chief engineer and the board of directors, which means their full satisfaction, not improperly or unjustly withheld; for the contracting party cannot unreasonably and unjustly refuse to approve work which was, in fact, well done, and then be justified in refusing to pay. The first question of fact for their determination, the work not having been actually done according to the contract, is, was it sanctioned and accepted by the chief engineer and the board of directors, and was the completion of the contract prevented by the unauthorized act of the company? If the work was, from time to time, as it progressed, and at

the time when the monthly payments were due, sanctioned and accepted by the chief engineer and by the board of directors, then the defendant is liable for such work so sanctioned and accepted, and the question is whether the work which was done was sanctioned and accepted as done, and at the time it was done. The burden of proof is on the plaintiffs to show this. Under the count in covenant, there was no question in regard to the waiver by the defendant of the non-completion of the contract by May 1, 1872, or that the contract was not completed when it was rescinded. The court charged that, the contract not having been completed, if its completion was prevented by the improper and unauthorized abandonment by the defendant, and if the work which had been done was performed according to the contract, such work was to be paid for according to the terms of the contract.

Upon the plaintiffs' claim for damages for the rescission of the contract by the defendant, the court submitted to the jury the question whether the rescission was improperly made, and, upon the claim of the defendant that one reason for the rescission was because work was stopped by the plaintiff on March 10, 1873, charged that the defendant was bound to pay promptly the monthly estimates in guarantied bonds. They were not obliged to take pay in orders upon the towns. The defendant was bound to furnish bonds. If the defendant did not pay according to the contract for the work which was done according to the contract, or which had been accepted and sanctioned by the company in March, 1873, or if the defendant had paid out all the bonds, and had no bonds to give the plaintiffs, and the plaintiffs knew that fact, the plaintiffs were not bound to go on and complete the contract when the defendant had no bonds to give them, and the plaintiffs knew it. In regard to the work mentioned in the contracts of Edwards and others, which are referred to in the plaintiffs' bill of particulars, the court charged that, if the jury found that any of these contractors failed to fulfill their contracts, the plaintiffs were not bound to take any such contract up and fulfill it, in lieu of such delinquent contractor, unless the defendant first gave them reasonable notice of the default of the latter, and demanded the fulfillment of such contract by the plaintiffs; and if the defendant had accepted the work of such other contractor, notwithstanding its deficiency, and had paid him off in full, this would operate as a discharge of the plaintiffs from any liability to make good such deficiency.

1. The question which arises upon the first request is one of pleading, viz. that the plaintiffs cannot recover upon the common counts for any work done or materials furnished under the contract, which was under seal. In the same connection may also properly be considered the point that a count for breach of covenant cannot by amendment be added to counts in assumpsit for the value of work accepted by the defendant which was originally undertaken under the contract set forth in the count in covenant, and for extra work performed at the defendant's request. When the action was brought, it was admitted and was patent that the terms of the contract which required a completion of the work on April 1, 1872, had not been complied with, and that the contract also required that payment of the work as it progressed should be made in monthly installments, and that such payment had not been made; and it was claimed by the plaintiffs, and may now be considered as established by the verdict, that all work which had been done either under the contract, or as extra work prior to the rescission of the contract by the defendant, had been sanctioned and accepted by it. For the value of the work which had thus been done and accepted, an action of general assumpsit was brought. The cases of Dermott v. Jones, 23 How. [64 U. S.] 220, 2 Wall. [69 U. S.] 1, and Jewell v. Schroeppel, 4 Cow. 566, seem to have settled the doubts which formerly existed in regard to the right of a contracting party to bring assumpsit under the circumstances stated, when a sealed contract had been originally entered into. These cases hold that when work is not completed within the time specified in a building contract under seal, if the plaintiff has subsequently, to the time specified for completion, continued in good faith, with the permission of the defendant, to do the work specified in the contract, and also to do extra work, and the work thus done has been accepted, the work is to be paid for, and, the contract no longer being executory, a recovery can be had in an action of indebitatus assumpsit upon an implied promise on the part of the defendant to pay such a sum as the services which have been performed and the benefit which has been conferred are worth. In Dermott v. Jones, 2 Wall. [69 U. S.] 1, the court say: "While a special contract remains executory, the plaintiff must sue upon it. When it has been fully executed according to its terms, and nothing remains to be done but the payment of the price, he may sue on the contract, or indebitatus assumpsit, and rely upon the common counts. In either case the contract will determine the rights of the parties. When he has been guilty of fraud, or has willfully abandoned the work, leaving it unfinished, he cannot recover in any form of action. Where he has in good faith fulfilled, but not in the manner or not within the time prescribed by the contract, and the other party has sanctioned or accepted the work, he may recover upon the common counts in indebitatus assumpsit. He must produce the contract upon the trial, and it will be applied as far as it can be traced; but if, by the fault of the defendant, the

cost of the work or materials has been increased, in so far the jury will be warranted in departing from the contract prices. In such cases the defendant is entitled to recoup for the damages he may have sustained by the plaintiff's deviations from the contract, not induced by himself, both as to the manner and the time of performance." The charge of the court was in accordance with the law as laid down in the cases which have been cited. The plaintiffs, having brought an action upon the common counts, afterwards amended by a count in covenant. At the common law such joinder is inadmissible, but the statute of Connecticut permits counts in assumpsit and covenant to be joined, so that several causes of action upon different promises, whether evidenced by a sealed instrument or by parol, can now be joined in one declaration in different counts. If the non-performance as to time of a contract under seal has been waived by the defendant, and the plaintiff has subsequently been prevented from the completion of the contract by the other party, the plaintiff may maintain an action of covenant for the contract price of the completed work. Phillips & Colby Const. Co. v. Seymour, 91 U. S. 646. But the defendant insists that amendments are governed by the rules which the circuit court has prescribed, and the circuit court for this district having substantially adopted the rule prescribed in the Connecticut statute of amendments, which permits the plaintiff to insert new counts for the same cause of action as that declared upon in any of the original counts, and in any form of action, counts in which might have been originally inserted in the declaration, the amendment was not properly allowable, because a count in covenant for payment of the sums due on a sealed contract, and for damages for its breach, is not for the same cause of action as a cause for work and labor on a quantum meruit. The statute of amendments of this state, which is the rule of the United States courts in this district, does not use the phrase "ground of action" or "cause of action" in any technical sense. It is held to refer rather to the real object of the plaintiff in bringing the suit, which is to be determined, not merely by the face of the declaration, but also by the extrinsic circumstances of the case. Howland v. Couch, 43 Conn. 47; Nash v. Adams, 24 Conn. 38. In this case, the object of the plaintiffs in bringing their original suit, as appears by the bill of particulars, was to obtain payment for their services and labor in the construction of this railroad and for the losses which they sustained in consequence of the acts of the defendant. Whether assumpsit is the proper remedy for all the items in the bill of particulars is not material. Probably the plaintiffs desired to amend, because they supposed that their object in bringing the suit could be more perfectly accomplished by an amendment. Courts in this state have been liberal in the allowance of amendments, in order that the questions at issue between the parties in relation to the subject-matter of the original declaration might be decided in one suit, and strict technicalities have not been allowed to prevent the accomplishment of this result. Such an amendment is generally permitted in states where the disctintion between covenant and assumpsit has been abolished. Phillips & Colby Const. Co. v. Seymour, 91 U. S. 646.

2. The defendant claims that the plaintiffs, having agreed to perform their contract to the full satisfaction of the chief engineer and board of directors, were bound to prove affirmatively that they had done so, or that they were excused from doing so; and that the board of directors having been dissatisfied with the manner of the plaintiffs' performance, and having notified them accordingly, and having considered the contract as at an end, this action on the part of the board, whether just or unjust to the plaintiffs, is conclusive against them. This request is based upon the principle that when a contracting party has agreed to be bound by the determination of the co-contracting party or of a third person in regard to the value of the work, or its conformity with the requirements of the contract, or the diligence with which the work is being prosecuted, such determination is final, because it is the exercise of a power reserved in the contract, and is the agreement of the parties, unless the person making the decision is guilty of bad faith. The cases of Woodruff v. Hough, 91 U. S. 596; Philadelphia, W. & B. R. Co. v. Howard, 13 How. [54 U. S.] 307; Ranger v. Great Western Ry. Co., 5 H. L. Cas. 72; Scott v. Liverpool, 3 De Gex & J. 334; Stadhard v. Lee, 3 Best & S. 354,—are examples of this doctrine. The question, however, which is here to be considered, is not in regard to the correctness of this principle, which is well settled by the cases cited, but it is in regard to the construction of this contract, and whether the contract made the satisfaction of the defendant, in the absence of bad faith, conclusive upon the plaintiffs, and a condition precedent to their right to recover. The rules of construction of contracts which are claimed to reserve in one of the contracting parties the final power of determination as to the value or character of the work which is being done, or as to the diligence with which it is performed, are suggested in two recent English cases. "The duty of a court in such cases is to ascertain and give effect to the intention of the parties as evidenced by the agreement, and though, where the language of the contract will admit of it, it should be presumed that the parties meant only what was reasonable, yet, if the terms are clear and unambiguous, the court is bound to give effect to them, without stopping to consider how far they may be reasonable or not." Stadhard v. Lee, 3 Best & S. 364. "A power which is,

in effect, to inflict a heavy penalty upon one of the contracting parties, must be created in clear and unambiguous terms, or must arise by necessary implication." Roberts v. Bury Imp. Com'rs, L. R. 5 C. P. 310, per Kelly, C. B. This case does not come within that class of cases in which the certificate of the surveyor or engineer that the work has been performed according to the specifications is a condition precedent to any payment, because, assuming that the monthly estimates of the engineer were a condition precedent, these estimates had regularly been made, and the amounts which were estimated by the engineer had been credited to the plaintiffs upon the books of the company. The question depends upon the construction of other parts of the contract. By this contract a large amount of work was to be performed by the contractor, which was to be paid for in monthly installments. The only language which indicates the extent of the power which was conferred upon the railroad company to determine whether due diligence was being used by the contractor is the undertaking of the plaintiffs to perform the work to the full satisfaction of the chief engineer and the board of directors; that is, to the satisfaction of the corporation. Ranger v. Great Western Ry. Co., 5 H. L. Cas. 72. There is no proviso which, either expressly or impliedly, invests the officers or agents of the company with the determination of the question of diligence, or which provides that the dissatisfaction of any officer with the manner or promptness of execution shall give to him or to the company, not acting mala fide, final and conclusive power to rescind the contract. An intention of the parties to confer upon the recipient party such large powers cannot be found in the language of the contract, which contains simply the words which are ordinarily employed in contracts of this character, for generally, in contracts for structures, in the construction of which the taste or convenience of the party for whom the work is done is not a material element, the mere undertaking of the contractor that the work is to be performed to the satisfaction, or the full satisfaction, of the other party, without other language enlarging the scope of the agreement, means to his satisfaction not unreasonably withheld, or reasonably to his satisfaction. Dallman v. King, 4 Bing. N. C. 105; Parson v. Sexton, 4 C. B. 899; Andrews v. Belfield, 2 C. B. (N. S.) 779; Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475; Memphis, C. & L. R. Co. v. Wilcox, 48 Pa. St. 161. The same construction has been given to the same language in other classes of commercial contracts. Braunstein v. Accidental Death Ins. Co., 1 Best & S. 782; Folliard v. Wallace, 2 Johns. 395.

3. The third and fourth requests were in regard to the construction of that portion of the contract which provides for monthly payments in bonds. The request is based upon this state of facts: The contract provides for payment in monthly payments, which payment is to be made "in bonds which are to be guarantied by the town of Portland, Chatham, and Hebron, respectively, and, when these are used up, then in bonds to be guarantied by the town of Middletown." By the terms of the vote of Chatham, no bonds were to be guarantied until the road was completed. The Portland and Middletown bonds, except for interest, were not to be guarantied until contracts had been made for completion of the road. No Hebron bonds were to be guarantied until like contracts had been made. This event might not occur until after the plaintiffs' work had been wholly or partially completed. The payments were actually made in Portland and Middletown bonds, which were issued, and were ready for delivery at the time of the monthly estimates. The defendant insists that, inasmuch as Chatham bonds could not be issued until after the completion of the road, and Middletown bonds were not required to be paid until the bonds of the other towns were used up, the defendant was not in default for nonpayment. The corporation had prior to November 1, 1871, entered into a contract for the construction of the road with divers persons, all which contracts had been broken by reason of the inability of the defendant to make payments. It had now undertaken to pay for the road building and track laying in guarantied bonds, and to pay in monthly installments as the work progressed. The provision for monthly payments was a most important one to the plaintiffs. It is hardly reasonable to construe the contract so that it shall provide that the defendant should not be in default in not making monthly payments, especially as its duty so to pay had been uniformly recognized. It is more in accordance with the ordinary rules of construction to harmonize the different provisions of the contract so as to carry out the plain and obvious intention of both parties. The construction which the court gave to the contract was the one which the parties had practically placed upon it, and which they followed at and after the execution. By this construction, the plaintiffs were to be paid their monthly installments in bonds of Portland or Chatham or Hebron, which were ready for delivery at the time when the payments were, respectively, due, and if such bonds, ready for delivery, were exhausted, then in bonds of Middletown. The Middletown bonds were to be given if others were not ready or did not exist, and seem always to have been ready.

4. The fifth, sixth, and seventh prayers are based upon the theory that, because the town votes provided that no bonds should be guarantied, until contracts had been entered into for the entire completion of the

road ready for travel, therefore the contract with the plaintiffs is to be construed so as to make it obligatory upon them to complete the road ready for travel. The contract provided that they should perform the work therein mentioned, and mentioned under the name of John Lee & Son in the engineer's estimate attached thereto. Neither the contract nor the estimate mentioned work subsequent to track laying, but the subsequent labor and materials were provided for in the Richardson contract.

5. The eighth prayer requests the court to charge, in substance, that the plaintiffs were answerable for the default of any of the other contractors. upon other sections without notice of such default. It is sufficient to say that such was not the intention of the parties as manifested in the contract. The plaintiffs were not sureties for the other contractors. They were to do unfinished work at the same prices, and upon the same terms and conditions, which had been agreed upon with the other contractors, but were not to do the work without payment by the defendant. Whether such imperfect or unfinished work had been accepted and paid for in full, and, if it had been paid for, whether the defendant wished to have it completed and to pay the plaintiffs, and, in general, all the facts in regard to any default of the other contractors, were, peculiarly within the knowledge of the defendant, and not within the knowledge of the plaintiffs.

6. The defendant excepts to the charge of the court that the failure of the defendant to pay the monthly installments, or their inability in fact to make any payments, coupled with the plaintiffs' knowledge of such inability, justified the plaintiffs in suspending work on March 10th. Contracts of this character, which provide on the one part for the completion of work by a specified time, and which also compel monthly payments as the work progresses, do not compel the party who performs the labor to complete the contract, after the other party has been guilty of a default in his payments. The contractor can thereupon cease work, and can recover for the value of the labor actually done. "The defendant having defaulted on a payment due, plaintiffs are not required to go on at the hazard of further loss." Phillips & Colby Const. Co v. Seymour, 91 U. S. 646; South Fork Canal Co. v. Gordon, 6 Wall. [73 U. S.] 561. In this case the defendant has no money, and was in any event only able to pay in bonds. It is admitted that it had ceased to pay the plaintiffs after December, 1872, except in orders, and prior to March 10, 1873, it had disposed of all the guarantied bonds, so that it could not comply with its agreement. Payment of the plaintiffs' contract by the defendant was

impossible. Both parties had full knowledge of this fact. In this state of things, the law does not compel a contractor to complete his contract, when nonpayment from the other party was not only probable, but certain.

7. The admission of Fielder's testimony became immaterial, by the charge, adverse to the plaintiffs' position, that the contract was silent as to the party by whom "borrow pits" were to be furnished. Greenleaf's Lessee v. Birth, 5 Pet. [30 U. S.] 135.

8. The exception to the testimony of the defendant's secretary. The general object of the cross-examination was to show the active participation of the defendant in efforts to prevent the plaintiffs from receiving their pay. The special object of the question which was objected to was to show the relation in point of time of a fact, which was not denied, to another occurrence, and the witness was asked, in substance, "Do you not recollect that, subsequent to a named date, a batch of suits was brought against Lee, wherein the company was factorized?" The existence or contents of the writs were not the subject of the inquiry, but the object was to show, upon cross-examination—First, that the company instigated suits; and, secondly, that they were brought after a certain date. Upon cross-examination, the question was properly allowed. Williams v. Cheesebrough, 4 Conn. 356. The motion for a new trial is denied.