CENTRAL NEBRASKA MILLWORK COMPANY, APPELLEE, V. OLSON & JOHNSON COMPANY ET AL., APPELLANTS.

FILED DECEMBER 31, 1923. No. 22555.

1. Schools and School Districts: CONTRACTS: ARBITRATION. Where a contractor enters into a contract for the erection and construction of certain school buildings with the owner, the contract reciting that the buildings are to be constructed according to certain plans, drawings and technical specifications which by specific reference are made a part of the contract, and where the technical specifications provide in substance that the architect shall be the sole arbitrator of all disputes and of the character of work and materials furnished, and where subsequently the contractor enters into another contract with a third party to furnish certain millwork and glass delivered at the place, and the third party obligates himself to furnish the materials in accordance with the plans and specifications, he does not thereby contract that the architect shall be the arbitrator of questions of damage or disputes as to whether the materials are in conformity to the plans and specifications.

2. ———: ———: ———. In such case the reference to the plans and specifications in the contract between the original contractor and the third party is for the specific purpose only of pointing out how the work is to be done and the character and quality of the materials to be used.

APPEAL from the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*Max V. Beghtol* and *Tibbets, Fuller & Tibbets*, for appellants.

*Harry S. Dungan* and *Stiner & Boslaugh, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY and GOOD, JJ., REDICK, District Judge.

DAY, J.

This action was brought by the Central Nebraska Millwork Company, hereinafter referred to a. plaintiff, against Olson & Johnson Company, hereinafter called the contractor, and the United States Fidelity & Guaranty Company, hereinafter called defendant. The plaintiff alleged two causes of action, based on two separate bonds executed by the contractor to the school district of York, Nebraska, upon each of which said bonds the defendant bonding company was surety. No service of process was had on the contractor. The trial resulted in a verdict and judgment in favor of the plaintiff for $4,511.15. Defendant appeals.

The following facts, as disclosed by the record, will serve to make clear the points in controversy: On June 9, 1917, and again on August 21, 1917, Olson & Johnson Company entered into separate contracts with the school district of York, Nebraska, for the erection and construction of certain school buildings in accordance with plans and specifications prepared by an architect which were adopted by the school district. The first contract called for the erection and construction of three grade school buildings, and the second for the erection and construction of a high school building. Each of these contracts referred to certain

plans, general and technical specifications, and made the same a part of the contract the same as though fully written therein. The technical specifications in general made the architect the sole arbitrator of all disputes arising between the contractor and the school district, and also the sole arbitrator as to whether the work and materials conformed to the plans and specifications. To insure the faithful performance of the contracts, the contractor pursuant to the requirements of section 3224, Comp. St. 1922, executed the two bonds on which the action is founded, one in the penal sum of $118,485 to insure the performance of the contract for the three grade school buildings, and one for $117,405 for the high school building. Each of the said bonds contained the following condition:

"Now the conditions of this obligation are such that if the said Olson & Johnson Company shall well and truly keep and perform all the conditions of this contract and pay off and settle in full, with the person or persons entitled thereto, all the accounts and claims that may become due by reason of laborers' or mechanics' wages or for materials furnished or services rendered for the Olson & Johnson Company in executing and performing the obligation of said contract, so that all such persons shall receive his just dues in that behalf, then this obligation shall be of no effect; otherwise it shall remain in full force and effect in law."

On June 23, 1917, and again on September 10, 1917, the Olson & Johnson Company entered into separate contracts with the plaintiff to furnish certain materials and millwork to be used in the construction of said school buildings. The two contracts were identical in form, except as to the consideration to be paid, and the buildings for which the materials were to be furnished, one referring to the three grade school buildings, and the other to the high school building. These contracts provided that the plaintiff would furnish and deliver f.o.b. cars at York, Nebraska, for use in the construction of the school buildings at York, certain materials and millwork specifically described in the con-

tracts, in accordance with the plans, specifications, drawings and details as prepared by the architect. The plaintiff claimed there was a balance due upon the first contract which, together with extras furnished to the contractor, at his request, and which were used in the construction of the buildings described in the first contract, amounted to $637.42. Upon the second contract, together with extras, the plaintiff claimed a balance due of $3,364.20. Plaintiff prayed for $4,001.62 with interest.

The answer of the defendant admitted the contracts pleaded, and the execution of the bonds. By way of cross-petition the defendant alleged that as surety it became subrogated to the rights of the contractor under its contract with the plaintiff; that the plaintiff did not perform its contract as provided by the terms thereof; that the materials delivered were of such a defective character that they were rejected by the school district; that the defendant was obliged to perform the obligations of plaintiff's contract at a big expense; and that defendant had been damaged by the breach of the plaintiff's contract in the sum of $10,000. The allegations of the answer other than the admissions were denied in the reply.

One of the theories of the defendant was that, under the contract between the plaintiff and the contractor, the architect of the building was made the sole arbitrator of whether the materials furnished complied with the plans and specifications for the buildings, and that his judgment with respect to the amount of damages the contractor may have sustained by a breach of the contract on the part of the plaintiff was final and conclusive.

In support of this theory, the defendant sought to introduce in evidence a report made by the architect at the request of the school district, in which in a great many particulars it was stated that the buildings had not been constructed in accordance with the plans and specifications, and also it was therein determined what the amount of damages was that the school district sustained by reason of the breach of the contract. This report had special

reference to the contract betwen Olson & Johnson Company and the school district, but it also stated that the contract between the plaintiff and Olson & Johnson Company had not been performed in accordance with the terms thereof. With respect to the three grade schools, the architect determined that the school district had been damaged in the sum of $5,836.91, which he decided should be borne in equal proportions by the contractor and the plaintiff as subcontractor, to-wit, $2,918.45 each. He also determined that the plaintiff should pay $361 for inferior glass used in the performance of its contract, making a total chargeable to the plaintiff of $3,279.45.

Defendant also sought to show by the architect's report to the school district that in the construction of the high school building the district had been damaged by a breach of the contract on the part of the general contractor in the sum of $5,812.38, and that this damage should be borne in equal proportions by the contractor and the plaintiff, each paying $2,906.19. His report further showed that the plaintiff should be charged an additional sum of $1,682.28 for the use of defective materials in breach of its contract, making a total sum chargeable to the plaintiff on the high school contract of $4,588.47. The trial court excluded these reports of the architect, on the theory that under the contract between plaintiff and Olson & Johnson Company the architect was not made arbitrator.

The principal error assigned relates to the exclusion of this testimony, and the failure to give certain instructions tendered by the defendant, which embodied the general idea that the contract between the plaintiff and the contractor made the architect the sole arbitrator of whether the materials furnished by plaintiff were in accordance with the plans and specifications, and also that he was the sole arbitrator of any damages which the school district or the contractor may have sustained by reason of the breach of plaintiff's contract. In this wise the different viewpoints between the plaintiff and the defendant as to what the plaintiff's contract embodied was presented to the court.

The question of the correctness of the ruling of the court turns upon the interpretation placed upon the plaintiff's contract. By the terms of the plaintiff's contract it was to furnish certain materials f.o.b. cars at York for use in the school buildings. Said materials to be in accordance with the plans and specifications and drawings. By the use of this language can it be said that the plaintiff contracted to be bound by the action of the architect in determining whether its contract had been properly performed, and also made him the sole arbitrator of any damage which might be occasioned by the breach of plaintiff's contract? We think not. It is fundamental that a person cannot be bound beyond the terms of his contract. Assuming that the contract between the original contractor and the school district gave such authority to the architect, the terms of that contract cannot be engrafted upon the plaintiff's contract unless the latter contract clearly indicates that it should be done. Generally speaking, in a contract where reference is made to another writing for a particular specified purpose, such other writing becomes a part of the contract for such specified purpose only. The reference to the plans and specifications in plaintiff's contract serve no other purpose than to show how the work was to be done, and the quality and kind of material to be used in the performance of plaintiff's contract. Cases sustaining this view are: *Moreing v. Weber*, 3 Cal. App. 14, and *Woodruff v. Hough*, 91 U. S. 596.

Of course, it was the duty of the plaintiff to perform its contract, and it would be liable for any breach thereof. Some of the items in the report of the architect, if substantiated, would indicate that the plaintiff had not fully performed its contract, and that there should have been some reduction for this failure. The report, however, was offered in its entirety, and for reasons heretofore given was properly excluded.

If under a proper construction of the plaintiff's contract the architect was not made an arbitrator, it necessarily follows that the court did not err in refusing to give the instructions requested by the defendant.

Other questions presented by the record relate to the sufficiency of the evidence to support the judgment. We think that was clearly a question for the jury. The plaintiff's contract required it to furnish the materials f.o.b. at York, Nebraska. It had nothing to do with the installation of the material it manufactured. That was done by the contractor. The testimony shows that when the buildings were completed the rain beat in around the windows and other openings, and did a great amount of damage to the buildings, necessitating the removal of plaster and taking out and replacing a large amount of masonry at great cost to the school district. This was the occasion of the report made by the architect. It is difficult to imagine upon what theory the architect apportioned this damage equally between the contractor and the plaintiff who was sub-contractor.

A large number of cases are cited by defendant's counsel, but an analysis shows that the contracts which they were dealing with are entirely different from the contract in the case at bar. Authorities in this class of cases are not of much avail, because in the end each case must turn upon the phraseology of the contract involved.

The defendant also complained of the taxing as part of the costs of $400 as fees for plaintiff's attorneys. We think that an allowance of an attorney's fee in this kind of an action is sanctioned by section 7811, Comp. St. 1922. An additional sum of $100 is allowed plaintiff's attorneys for services in this court. *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.*, 98 Neb. 863.

Upon reviewing the entire record, we think the issues were fairly submitted to the jury, and that the verdict and judgment are sustained by the evidence.

The judgment of the trial court is, therefore,

AFFIRMED.