GENERAL CONTRACTING CORPORATION et al. v. UNITED STATES, for Use and Benefit of WEST VIRGINIA SAND & GRAVEL CO. et al.

No. 3562.

Circuit Court of Appeals, Fourth Circuit.
April 3, 1934.

George Poffenbarger, of Charleston, W. Va. (Poffenbarger & Poffenbarger, of Charleston, W. Va., on the brief), for appellants.

W. E. R. Byrne, of Charleston, W. Va., for appellee.

Before SOPER, Circuit Judge, and BAKER and CHESNUT, District Judges.

SOPER, Circuit Judge.

On March 27, 1931, the General Contracting Corporation entered into a contract with the United States for the construction of a lock in the Great Kanawha river, at Marmet, W. Va. And in conformity with the Act of August 13, 1894, c. 280, 28 Stat. 278, as amended by the Act of February 24, 1905, c. 778, 33 Stat. 811 (40 USCA § 270), the contractor executed a bond to the United States in the penalty of $399,731 with the Seaboard Surety Company as surety, conditioned for performance of the contract and prompt payment of all persons supplying the contractor with labor and materials. After completion of the project, suit against the principal and surety on the bond was brought under the act in the name of the United States for the use and benefit of West Virginia Sand & Gravel Company and Pfaff & Smith Builders' Supply Company, to recover the respective sums of $7,768.78 and $10,941.85, with interest, alleged to be balances due on account for sand and gravel furnished by them to the contractor.

Defendants pleaded the general issue and filed also a special plea in the nature of a plea of set-off, in which they claimed damages: (1) For delays on August 11, 1931, and September 3, 1931, alleged to have been caused by failure to deliver sand and gravel according to order; (2) for failure to furnish sand and gravel complying with the specifications of the contract between the government and the contractor; and (3) for breach of a provision in the supply contract requiring plaintiffs to deliver sand and grav-

el in barges in good repair, and to pump all water out of the barges. Considerable evidence was introduced at the trial as to these three claims, and also as to a claim of deficiencies in gravel alleged to have been sold, and all four issues were submitted to the jury, which rejected the evidence of defendants altogether and returned a verdict for each plaintiff for the full amount claimed. On motion for new trial, the judge below held that the jury should have allowed $631.-85 as damages for failure to furnish sand and gravel complying with the specifications, but, upon remission of this amount, apportioned between the two plaintiffs, judgments for the balance were entered, and defendants took the present appeal.

The principal question here centers upon the correctness of the charge of the trial judge upon the issue of damages for delay. On that issue, defendants' evidence tended to show, with minor variations not here material, that on August 11, 1931, and September 1, 1931, the supply of sand and gravel on hand for the project ran short and the contractor was forced to abandon cementing operations for periods of twelve and twenty-eight hours, respectively, at a loss of approximately $1,457.43 per day for two days by reason of the necessary shifting of cement men to unskilled employment, idleness of equipment, and overhead expense. It was the defendants' contention that this loss was caused wholly by the failure of plaintiffs to deliver sand and gravel according to order immediately prior to the dates of delay, and it is not controverted that two tows of sand and gravel were ordered and agreed to be delivered on Sunday, August 9, and five barges of gravel and three of sand were ordered for delivery on August 31 and September 1. These orders, moreover, were properly communicated to plaintiffs within the terms of an understanding, subsequent to the formal contract between the parties, that 48 hours' notice of requirements should be given. Only one tow of sand and gravel was delivered on August 9, however, and only three barges of gravel and one of sand on the later dates, these amounts being insufficient to permit cementing to continue until further deliveries were made, after the delays complained of. These facts were practically undisputed, but the District Judge adopted the view of plaintiffs that, under the sand and gravel contract, the contractor was not entitled to work on Sundays, and that if the shortages, which in each instance occurred on Tuesday, were brought about by work which the contractor had done on the preced-

ing Sunday, the plaintiffs' failure to comply with the orders would be excused. The jury were instructed that if Sunday work caused the shortages, in whole or in part, the defendants were entitled to no credits for their damages incident to the delays, and defendants took appropriate exceptions. As Sunday work was admitted, and the evidence clearly established the delays and the plaintiffs' part therein, the error, if any, was clearly prejudicial.

The government's contract did provide that the contractor should do no work on Sunday except in cases of emergency, and then only with the written consent of the contracting officer. Such consent was in fact obtained for each month from May, 1931, until the project was completed, and hence if it should be supposed that the obligations of the supply men were governed by the terms of the main contract, they were obliged to consider Sunday as a working day for which material would be needed. The supply men contend that they were entitled to rely on the terms of the contract between them and the builder, which contained the following provision with regard to deliveries in barges and the time allowed for unloading: " * * * Delivery is to be made in either steel or wood barges in good repair, and all water in the hulls is to be pumped from the barges before delivery is made to us. Delivery is to be made as required by our field superintendent, and upon notice from our field office * * * " (There follows an irrelevant estimate of the amounts of sand and gravel that would be required.) " * * * Subject to river conditions, we are to be allowed 48 hours free unloading time, Sundays and holidays excluded (as the specifications do not permit us to work on these days). Demurrage charges of $10 per day for all unloaded barges held on our account over that period."

The rule, established by Guerini Stone Co. v. Carlin, 240 U. S. 264, 277, 36 S. Ct. 300, 306, 60 L. Ed. 636 (and see Woodruff v. Hough, 91 U. S. 596, 602, 23 L. Ed. 332; Ingram-Day Co. v. McLouth, 275 U. S. 471, 48 S. Ct. 153, 72 L. Ed. 378), is that "in the case of subcontracts, as in other cases of express agreements in writing, a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."

In this instance, the reference to the main contract was made merely to explain the necessity of excluding Sundays from the computation of unloading time. There is no evidence that it influenced in any way the failure of the supply men to furnish sufficient material to keep the plant in operation seven days in the week; nor is there any showing in the record that any advantage would have accrued to them from the cessation of Sunday work. On the contrary, their interests would be served by hastening the progress of the work and speeding the time when deliveries would have been accomplished and payment for the goods would have been made. Indeed, the demurrage provision enlarging the time for unloading the scows was a concession to the building company. It was not a promise to do no work on Sunday. However, if the supply men were entitled to treat as part of their contract the provision in the government contract in regard to Sunday work, the whole of that provision including the qualification of emergency work would necessarily have to be considered.

In this view, the instruction complained of was erroneous, and the judgment must be reversed. It does not help the plaintiffs in this regard that the contractor paid the account for sand and gravel up to and including September 10, 1931, or beyond both periods of delay; for, aside from the fact that protest had already been voiced as to each delay, the defendants' claim does not impeach the account. An account stated constitutes prima facie evidence of the correctness of the items included therein; it has no effect upon demands wholly independent of those items, as, here, a distinct claim for damages by way of set-off. Perkins v. Hart, 11 Wheat. 237, 256, 6 L. Ed. 463; Burrill v. Crossman (C. C. A.) 91 F. 543; Veneri v. Draper (C. C. A.) 22 F.(2d) 33.

On the two remaining issues, as to asserted deficiencies in gravel alleged to have been sold, and as to the claims for damages by reason of the necessity of pumping water from the barges, it is sufficient to say that the evidence on these issues was not of such a character as to establish the defendants' claims as a matter of law.

The assignment of error with regard to the rulings of the trial court in the admission and rejection of evidence have been examined, but no prejudicial error appears. They have reference, moreover, merely to the question of Sunday work and the construction which we have placed upon the contract in that regard obviates any necessity of discussing them.

The erroneous instruction in regard to

Sunday work under the contract, however, makes it necessary to reverse the judgment of the District Court and remand the case for new trial, unless the plaintiffs in the District Court shall pay all the costs in this court and shall remit in writing on the judgment in the District Court within sixty days $2,914.86, the amount of the damages claimed by the defendant for the delays above mentioned; but if the plaintiffs shall pay such costs and remit such sum within sixty days, the judgment of the District Court stands as affirmed.

Reversed nisi.