## PHILLIPS AND COLBY CONSTRUCTION COMPANY *v.* SEYMOUR ET AL.

1. A., who had undertaken to build a railroad for a company, entered July 18, 1872, into a sealed contract with B. for building a hundred and sixty miles of the road. The contract, among other things, provided that B. should complete the first section, of forty miles, on or before the first day of September then next ensuing; the third section, of twenty miles, by the fifteenth day of that month; the fourth section, of twenty miles, on the fifteenth day of the following November; the fifth section, of twenty miles, on the fifteenth day of December; and so on; the whole to be completed May 1, 1873. Payment was to be made to B. as the work progressed, the 15th of each month, on monthly estimates, by the engineer of the railroad company, of the work done the previous month, except fifteen per cent after the completion of forty miles, which was to be retained as security for the performance by B. until the work should be completed, and to be forfeited to A., and applied to any claim for damages which he might sustain by the failure of B. to have the stipulated work completed at the time specified. Fifteen per cent of the estimates on the first forty miles, and a liquidated sum of $15,000 agreed to be paid for extra work on that section, were to be retained as security for the completion of the first sixty miles. B. failed to finish any portions of the work by the specified time; but A., although authorized by the contract to declare it forfeited, excused the failure, paid B. the estimate for the work then done, and permitted him to proceed with the work. B. continued to do so until A. failed to pay the large sums due him by the estimates for work done in October and November. B. then learned from A. that the latter was unable to pay those estimates, and would probably be unable for a time to pay future monthly estimates. B. thereupon ceased to do any further work, and brought this suit. *Held,* 1. That the declaration of B. was sufficient on demurrer, as it averred, in substance, that from the time he entered upon the performance of the contract in July, 1872, until the fifteenth day of December of that year, when A. wholly failed to make the stipulated payment for the work then actually done, he, with a large force and with suitable equipments along the whole line of the road, had prosecuted the work with all the energy and skill that he possessed, and that A. had expressed satisfaction at the manner in which the work was done. 2. That A. so far waived absolute performance on the part of B. as to consent to be liable on his covenant for the contract price of the completed work, but did not waive his right to whatever damages he may have sustained by the failure of B. to perform

such work by the specified time, and that A. might set up such damages by way of cross-demand against B.   3. The court below erred in charging the jury that time was not of the essence of the contract sued on, and that such damages could not, therefore, be recovered ; but, inasmuch as there was no legal evidence of such damages, the misdirection of the court worked no prejudice to A., and affords no ground for reversing the judgment.   4. That B. was not required, after A. had defaulted on a payment due, to proceed with the work at the hazard of further loss; and that he was entitled to recover the contract price of the work done, together with the fifteen per cent on the estimates, and the $15,000, both of which had been retained by A. as a security for B.'s performance of the contract.

2. In an action of covenant, evidence of a parol contract is inadmissible.   Had the declaration averred such a contract, it would have been bad on demurrer in the courts of Illinois, as the common-law rules of pleading and the distinction between forms of action prevail in that State.

3. Fifty-two assignments of error were filed in this case.   The court condemns such a practice as a flagrant perversion of the rule on that subject.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

*Mr. Thomas Dent* and *Mr. Edwin H. Abbot* for the plaintiff in error.

*Mr. Jeremiah S. Black* and *Mr. H. K. Whiton* for the defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The plaintiff in error, who was defendant in the Circuit Court, is a corporation organized under the laws of Wisconsin. It had undertaken to build the whole or a large part of the Wisconsin Central Railroad, and had made contracts with the defendants in error, whom we shall hereafter call plaintiffs, as they were in the Circuit Court, for the construction of a part of this road.   These contracts were drawn with the minuteness of detail usual in such cases, and provided, among other things, that payments should be made by defendant, as the work progressed, on estimates made monthly by the engineer of the railroad company, on the fifteenth day of each month, for all the work done the previous month, except fifteen per cent retained by defendant as security for performance on the part of plaintiffs until the work was completed.

The plaintiffs brought their action of covenant on these contracts, alleging that they had commenced the work in the month of July, 1872, shortly after the contracts were signed,

and prosecuted it vigorously until some time in December; that defendant had failed to pay the large sums due by the estimates for work. done in October and November; and, seeing no prospect of payments, plaintiffs were compelled to abandon the work, and bring this suit. They assert a claim for all the work done as estimated, and for various items of damage suffered by them in consequence of this failure of defendant to comply with its covenant to pay as agreed.

A demurrer to this declaration having been overruled, defendant filed fifteen pleas in bar; also an amended plea; and, on these, numerous issues of fact were finally joined.

A verdict and judgment were rendered in favor of plaintiffs for $119,061.46; to reverse which this writ of error is brought.

In this court, plaintiff in error, by one counsel, files forty-five assignments of error, and by another seven more; making fifty-two in all.

The object of the rule requiring an assignment of errors is to enable the court and opposing counsel to see on what points the plaintiff's counsel intend to ask a reversal of the judgment, and to limit the discussion to those points. This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on. We can only try to respond to such points made by counsel as seem to be material to the judgment which we must render.

Before we proceed to this examination, however, it may be as well to say, that, in addition to a general verdict in favor of plaintiffs for $107,353.44, the jury made three special findings on matters suggested by the court. These are, —

1. That, at the time of the alleged breach of covenant by defendant, it had waived or excused the failure of plaintiffs up to that time to complete certain parts of their work within the times stipulated in the contract; and that plaintiffs were, at the time of said breach, engaged in the performance of said work, with the consent of defendant.

2. That defendant, at the time plaintiffs stopped the work, had given plaintiffs to understand that defendant was finan-

cially unable to pay the estimates for work then done, and would probably be unable for a time to pay future monthly instalments.

3. That defendant had agreed to pay plaintiffs the extra cost of doing the earth-work by train on certain sections, and that the amount of this extra cost was $11,708.

These findings must be presumed to be in accordance with the facts, and must stand as foundations for the judgment of the court, unless it can be shown that they are affected by some erroneous ruling of the court in regard to the admission of evidence or instructions to the jury.

We now proceed to notice such objections to the rulings of the Circuit Court as we deem of sufficient importance to require it.

1. It is said that the declaration is fatally defective because it does not aver that the plaintiffs were ready, willing, and able to perform the covenants on their part to be performed by the contract. It is true that this might have been alleged in more formal and apt terms than it is. But they do aver, that, from the time they entered upon the work in July until the fifteenth day of Decmeber, — the day of the alleged breach on the part of defendant, — they prosecuted the same with all the energy and skill they possessed, having men in large numbers, — to wit, more than 1,000, — with suitable teams and other equipments, along the whole line of the road of 160 miles; and that defendant had expressed entire satisfaction with the manner in which plaintiffs were doing the work.

We are inclined to think, that, coupled with the allegation that defendant was in default for non-payment for work actually done, this was sufficient. It is not like a case where a plaintiff has done nothing, but is required to put a defendant in default by offering to perform, or showing a readiness to perform. Plaintiffs here had already performed, and the defendant failed to do its corresponding duty under the contract; and, defendant having defaulted on a payment due, plaintiffs are not required to go on at the hazard of further loss.

2. By the terms of the contract, plaintiffs bound themselves to complete the first section, of forty miles, by the first day of September; the third section, of twenty miles, by the fifteenth

day of the same month; the fourth section, of twenty miles, by the fifteenth day of November; and so on; and it is conceded that no one of these sections was completed within the time prescribed. It was also agreed, that if plaintiffs failed in this respect, or failed in the opinion of the engineer-in-chief of the railroad company to prosecute the work with sufficient vigor to completion according to the terms of the contract, the defendant might declare it abandoned, and the amount retained out of the monthly estimates forfeited. This was fifteen per cent of each monthly estimate, which, by the agreement, was retained by defendant as security for the due progress of the work.

The main proposition, underlying the whole argument of the defence on the general merits, is, that these covenants to complete certain sections within a definite time, and the covenant to pay, are mutual and dependent covenants; and that time is so far of the essence of this covenant of plaintiffs, that they can recover nothing, because they completed nothing within the specified time.

Where a specified thing is to be done by one party as the consideration of the thing to be done by the other, it is undeniably the general rule that the covenants are mutual, and are dependent, if they are to be performed at the same time; and if, by the terms or nature of the contract, one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done, or tendered, before that party can sustain a suit against the other. There is no doubt, that in this class of contracts, if a day is fixed for performance, the party whose duty it is to perform or tender performance first must do it on that day, or show his readiness and willingness to do it, or he cannot recover in an action at law for non-performance by the other party.

But, both at common law and in chancery, there are exceptions to this rule, growing out of the nature of the thing to be done and the conduct of the parties. The familiar case of part performance, possession, &c., in chancery, where time is not of the essence of the contract, or has been waived by the acquiescence of the party, is an example of the latter; and the case of contracts for building houses, railroads, or other large and expensive constructions, in which the means of the builder and

his labor become combined and affixed to the soil, or mixed with materials and money of the owner, often afford examples at law.

If A. contract to deliver a horse to B. on Monday next, for which B. agrees to pay $100, A. cannot recover by an offer to deliver on Tuesday; but if A. agree to deliver a horse, buggy, and harness on Monday, and B. accepts delivery of the horse and buggy, can he refuse to pay any thing, though he accepts delivery of the harness on Tuesday? This is absurd. He waives, by this acceptance, the point of time as to the harness, at least so far as A.'s right to recover the agreed sum is concerned. If B. have suffered any damage by the delay, he can recover it by an action on A.'s covenant to deliver on Monday; or, if he wait to be sued, he may recoup by setting it up in that action as a cross-demand growing out of the same contract.

Such we understand to be especially the law applicable to building contracts.

If the builder has done a large and valuable part of the work, but yet has failed to complete the whole or any specific part of the building or structure within the time limited by his covenant, the other party, when that time arrives, has the option of abandoning the contract for such failure, or of permitting the party in default to go on. If he abandons the contract, and notifies the other party, the failing contractor cannot recover on the covenant, because he cannot make or prove the necessary allegation of performance on his own part. What remedy he may have in assumpsit for work and labor done, materials furnished, &c., we need not inquire here; but if the other party says to him, "I prefer you should finish your work," or should impliedly say so by standing by and permitting it to be done, then he so far waives absolute performance as to consent to be liable on his covenant for the contract price of the work when completed.

For the injury done to him by the broken covenant of the other side, he may recover in a suit on the contract to perform within time; or, if he wait to be sued, he may recoup the damages thus sustained in reduction of the sum due by contract price for the completed work.

It is said on the other side in this case, that the right of the

defendant to abandon the contract, and retain in its hands the fifteen per cent, is its only remedy, and that that has been waived. We need not decide this point here; for we are only answering the argument that plaintiffs have lost *all* right to sue on the contract by their failure to complete the sections in the times named.

As it is perfectly clear from the testimony that defendant, at the time these several sections should have been completed, made no point of the failure to do so, but urged the plaintiffs to go on, expressed satisfaction at the manner in which the work was progressing, and paid the estimate after such failure, the verdict of the jury, that defendant had waived strict performance as to time, was so far well founded as to enable plaintiffs to recover for work actually done.

3. This is an appropriate place to dispose of another objection. Defendant set up in its pleas and offered evidence to prove the damage sustained by those delays.

But the court instructed the jury, that, under this covenant, time was not of the essence of the contract; that on that point it was flexible, and defendant could not recover for the delay. As we have stated above, we are inclined to the opinion that defendant did not, by any of the acts proved in this case, waive its right to damages arising from this failure of the plaintiffs to complete the sections in time, but only waived the forfeiture, if it may be so called, of all right on the part of plaintiffs to sue. But an attentive examination of the testimony offered, and of the charge of the court on that subject, shows that no legal evidence of any damage was offered.

The attempt was to show, that, by the use of the road at an earlier day, much profit would have resulted. But the witness stated that the road ran through a wild, uninhabited country; that he expected that saw-mills would have been established along the line of the road, and the transportation of lumber incident to the use of such mills would have made the defendant a profit of $20,000.

The whole basis of this calculation is conjectural, uncertain, and vague. It is manifestly no safe basis on which it can be assumed that any business would have been done in the few days of the delay; or that, if done, it would have been done at

a profit.    There was nothing on which a jury could have done any thing but conjecture and speculate, at the hazard of sacrificing truth and justice.

There was, therefore, no error to defendant's prejudice in this part of the case.

4. It is said that the court erred in admitting evidence on the part of plaintiffs of the profits they would have made on the remaining part of the road if defendant had paid, so that they could go on.

Whether the evidence which was given on this subject was admissible or not was rendered immaterial by the subsequent ruling of the judge, who instructed the jury to disregard it, and to allow plaintiffs nothing on the ground of such supposed profits; and it is manifest from the record that nothing was allowed for this in the verdict.

5. The foregoing are the material objections, which are of a general character, to the rulings of the court.    The items for which the general verdict ($107,353.44) was had may be divided into three classes : —

I. An agreed sum of $15,000, which was to be paid on the completion of the first sixty miles of the road by the terms of the contract, and which was exclusive of the estimates for work done.    Defendant resisted this, on the ground that plaintiffs, not having finished the sixty miles, could not recover it in this action, and also because they had abandoned the work.

In the view we have already expressed, neither of these objections is sound.    If, by defendant's breach, plaintiffs were justified in abandoning the work, then they were entitled to all they had earned under that contract, including the $15,000; because the $30,000, of which this $15,000 was part, was a liquidated sum agreed upon as compensation for extra work on the first forty miles of the road which had been completed, and was only withheld, like the fifteen per cent, as security for the future performance by plaintiffs.

Defendant, having by its default terminated the work, had no longer any right to retain either of these sums.

II. The next class consisted of the estimates under the contract, which were unpaid.    This is by far the largest item of the verdict; and no serious contest is made except as to $19,937.55, which constituted the reserved fifteen per cent already mentioned.

As in the case of the $15,000, we are of opinion, that since the work was abandoned, and the contract, by reason of the breach thereof by the defendant, ended, it can have no right to retain any part of the estimates for work actually performed. This was to be retained as a security against failure or default of *plaintiffs*, and cannot be held by *defendant after* its own default has caused the abandonment of the work.

III. The third class is composed of a large number of items of damages incidental to the abrupt cessation of the work by reason of defendant's failure to pay, — such as loss of material, supply road, shanties, travel of hands, depreciation in value of tools, materials, &c. We cannot go into all these. After mature consideration of the very full briefs and arguments on these matters, we see no error in any ruling of the court in regard to them, and so dismiss their further consideration.

6. A more difficult point remains to be considered.

The plaintiffs were allowed to introduce evidence to prove that the defendant had made a verbal promise to pay the extra cost of doing by train the earth-work of the sections between 40 and 46; and the jury found a special and separate verdict, that it had so promised, and that this extra cost was $11,708.

There is no allegation of this promise in the declaration, which is an action of covenant on the sealed agreement. There is no allusion to it, or provision for it, in that instrument. It is found by the special verdict to be a promise, and the record shows that it was by parol. Defendant objected to the admission of the evidence of this contract, on the specific ground, that, if valid, it could be enforced in assumpsit only, and not in an action founded solely on the specialty.

The work done under the written contract could be estimated by the engineer, because a price was fixed by it for every thing. He had only to ascertain quantities, apply the prices, and ascertain the amount to be paid. For this extra cost of a special mode of doing part of the work, he had no elements out of which to make an estimate.

It is certainly opposed to the common-law system of pleading which prevails in the Illinois circuit, — to join the actions of covenant and assumpsit. If this had been done in the declaration, the defendant could have successfully demurred.

It is equally clear that covenant cannot be sustained on a verbal promise. Can the plaintiffs be allowed to prove a cause of action, which, if alleged in the declaration, would have been fatal to it on demurrer? and can they recover in an action of covenant on a special parol promise?

The judge below said he would not hazard the general verdict by permitting this matter to be embraced in it. He took the special verdict, and, notwithstanding his doubts, embraced the amount of it in the final judgment.

This matter grows immediately out of, and is intimately connected with, the work done under the written contract. It is merely a verbal agreement, that if the plaintiffs would do the work in a manner different from their obligation, more advantageous to defendant, and more expensive, defendant would pay this difference in expense. It seems reasonable that the claim for this extra cost should be decided in the suit in which the other compensation for the same work is recovered; that plaintiffs, having proved their case and recovered a verdict, should not be compelled to resort to a new suit in which this verdict would stand for nothing. Only a rule of pleading stands in the way, in this court, of doing what the very right of the case requires. We can give the plaintiffs their judgment for the amount of the general verdict, and reject this; or we can do complete justice, and affirm the judgment of the Circuit Court in full.

But the State of Illinois has adhered to the system of pleading which recognizes the lines that separate the forms of action at common law, and the act of Congress requires the Circuit Courts to conform to the mode of pleading of the State in which the court sits. Undoubtedly there was error under that system in admitting proof of a parol contract of this kind in an action of covenant; and as the defendant made this precise objection, and took an exception when overruled, we do not see how we can refuse to give it the benefit of its objection. In those States where the distinction between forms of action have been abolished, the declaration could have been amended, and the two matters joined in the same action. In that case, we might, under the statute of jeofails, disregard the error as one capable of removal by amendment below, and as cured by verdict and judgment when it comes here.

But sect. 954 of the Revised Statutes, which was sect. 32 of the Judiciary Act of 1789, was founded on the English statute of 32 Henry VIII., and is no broader. This act of Congress has been frequently construed by this court in such a manner as to forbid its application to the case before us. *Garland* v. *Davis,* 4 How. 131; *Stockton et al.* v. *Bishop,* id. 155; *Jackson* v. *Ashton,* 10 Pet. 480.

There is no room here for amendment. There could have been none in the court below. To allow a verdict to stand which is responsive to no issue made by the pleadings, or which could have been made by any pleading in that action, is farther than we can go in the promotion of abstract justice.

The judgment of the Circuit Court must be reversed, with direction to the court below to set aside the special verdict of the jury for the $11,708, and to enter a judgment in favor of plaintiffs on the general verdict of $107,353.44, with interest from the day it was rendered; and the plaintiff in error is to recover costs in this court.

If, however, the defendants in error shall within a reasonable time, during the present term of this court, file in the Circuit Court a *remittitur* of so much of the judgment of that court in their favor as is based on the special verdict, and produce here a certified copy of the *remittitur*, the judgment of that court will be affirmed.