## H. J. JOHNSON v. W. H. SLAYMAKER, ET AL.

1. A CONTRACTOR AGREEING TO BUILD A HOUSE WITHIN A CERTAIN TIME IS BOUND TO DO SO.

    Where a contractor agrees to build a house according to specifications within a certain specified time, he is bound to do so, unless he is prevented by plaintiff or unavoidable casualties intervened. He was the judge when he entered into such contract as to the time within which he could perform it, and if he agreed to difficult or inconvenient obligations, a court of law cannot relieve him from the consequences of his erroneous judgment. He is bound to perform the contract within the time named in it, and if he does not complete the house on the day named, the plaintiff has a right to say to him he should not longer continue the work and stopping him from completing this contract.

2. FAILURE TO COMPLETE HOUSE WITHIN TIME SPECIFIED—EFFECT.

    Where a contractor has nearly completed a house within the time specified in the contract, but not according to the terms of such contract; that is, that there had been deviations in it, that there were imperfections in the work, and that there were changes of materials made; such contractor, in such case, will be entitled to recover the value of his materials and labor, and plaintiff has a right and should be entitled to recover in such case damages for the delay in the completion of the building, and also any damages or loss, if any, occasioned by his being required to complete the building.

3. RECOVERY OF DAMAGES SUSTAINED BECAUSE HOUSE IS NOT BUILT ACCORDING TO SPECIFICATIONS.

    The d·mages sustained by the plaintiff in the construction of the building differently than called for by the plans, is an item which should reduce the amount to be recovered by the contractor for the value of his materials and labor. The am· unt ·of such damages is a question for the jury, and they should be instructed that from the value of the labor and materials put into the building by the contractor, there should first be deducted : *First*, damages for the delay in the construction ; *Second* damages on account of defendant's failure to construct according to plans; *Third*, damages, if any, on account of the cost to plaintiff of completing building in excess of contract price.

4. FAILURE OF CONTRACT TO DESIGNATE PERSON WHO IS TO FURNISH ESTIMATES—EFFECT.

    Where, according to the terms of a contract providing for the construction of a building, plaintiff is required to pay monthly and upon estimates, but such contract being silent on the subject as to who should furnish estimates and the parties have not agreed upon anybody to make them ; plaintiff can not be heard to say that he should never be required to pay because estimates were not furnished. And as no person has been agreed upon to make these estimates, it must follow that the estimates themselves must be agreed upon, and being a mere statement of account of materials and labor, they should properly come from the contractor and be submitted to plaintiff for his examinations and correction, and when agreed upon, the amount thereof paid. The fact that a contract fails to designate a person who is to furnish the estimates is a serious defect, but it does not avoid the contract nor render nugatory any of the obligations into which the party had entered.

ERROR to the Court of Common Pleas of Sandusky county.

KING, J. (orally.)

This action was commenced in the common pleas court by H. J. Johnson, plaintiff in error, against the defendants, Slaymaker, and The American Surety Company, and on the trial resulted in a verdict and . judgment in favor of defendant, Slaymaker, for $4,432.00, and also judg-

ment in favor of The American Surety Company for its costs. This judg-
ment the plaintiff in error seeks here to reverse. The record is extremely
long and contains a large number of exceptions to the admission and
rejection of evidence and the charge of the court and its refusal to charge
as requested by plaintiff.

### THE ISSUES.

Plaintiff in his amended petition set forth that on February 21, 1896,
he entered into a contract with Slaymaker to build for him (the plain-
tiff) upon the plaintiff's premises, a building known as the Oak Ridge
Sanitarium, situated near the village of Green Springs, Ohio, a copy of
the contract is attached to the petition and made part thereof, together
with the specifications for the construction of the building. He avers
that the defendant contractor departed from the contract in many re-
spects, particularly, that the footing courses in the wall should be of
large flat limestone ; the range work to be of first-class white limestone
laid in straight level courses, and the water tables of Berea blue sand-
stone. And he avers that the contractor did not use mortar and cement
as he agreed, did not put in the kind of stone in the footing courses, range
work and water tables required, that the door frames and window-frames
were not set as called for in the specifications, but some fourteen inches
higher; that he did not use the character of lumber for door frames
agreed on ; and that he did not construct the building within the time
limited in the contract, to-wit, June 20, 1896, and avers that by reason
of the breaches of the contract set forth and the failure to complete the
work an additional period of five months was necessary to finish it and
that he was kept out of the use of the building as a sanitarium during
the summer and fall season of the year, a time when it would have been
most valuable to him, and was thereby damaged in the sum of $7,300.00.
The contract set forth that the contractor was to do the work between
the day of the contract and June 20th. That he was to be paid by monthly
estimates made on the first day of each and every month for the material
and labor put into the building on the last preceding month and of said
amount that plaintiff was to pay eighty-five per cent. retaining 15 per
cent. until the building should be completed and accepted by the plain-
tiff. There was a provision in the contract that no liens should be created
by or through the contractor, and that he should purchase, furnish and
provide labor and material so as to not make Johnson liable, and so that,
there could not be placed upon the building any liens. A further pro-
vision was to the effect that no extras were to be charged except as
might be agreed upon by the parties in writing in advance of doing
the work, it was further stipulated that the contractor should give bond
in the sum of $10,000.00 which he did, with the defendant, The American
Surety Company, as surety.

Defendant, Slaymaker, in his answer admits the making of a con-
tract and the bond ; admits he began work under it and continued until
June 20, 1896; admits that he had not on that day completed the work
according to the contract. Admits he had not constructed a sun house
provided for in the contract strictly as provided for in the specifications.
He denies all other allegations of the petition alleging breaches on his
part and by way of counter-claim he sets forth eight causes of action or
counter-claims.

And as his first cause of action he says that the plaintiff, Johnson,
attempted to buy him off, and failing to do this, maliciously and wrong-

fully obstructed and delayed him in the prosecution of the work and caused liens to be taken out on his property and represented to divers person that he was not applying the money paid him to the payment of bills and was squandering the same, whereby he says he was damaged $2,000.00.

And second, he avers that the defendant maliciously held money due him and maliciously stated to the Surety Company that defendant was wrongfully refusing to pay for labor and material and was squandering his money in intoxicating drink to his damage $2,000.00.

For a third cause of action he says, plaintiff wrongfully requested and procured men, men who had furnished labor and material to perfect liens, to defendants damage $1,000.00.

Fourth, that after he commenced work and after plaintiff had designated the place where the building was to stand, he came and objected to placing the building at that place, and requested it to be built in another place. That this required him to do an additional amount of work at great expense, to his damage $600.00.

For his fifth, he alleges that because of numerous changes made and caused by Johnson, he was entitled to reasonable time for the completion of his work, that on June 20, 1896, an estimate was made and at that date he had performed work and furnished material amounting to $10,176.00. That on June 22d, two days later, Johnson maliciously and forcibly ejected him from the building and left unpaid on the contract $6,376.00; and further avers that he would have made a profit of $2,000.00 if allowed to continue, and he asks judgment for both said sums.

In the sixth cause of action he states that a contract was made by which he agreed to lay certain rough floors not included in the original contract, for which Johnson agreed to pay him $545.00 for $425.00 cash and $120.00 in glass for material of the plaintiff.

In the seventh he avers that by agreement with plaintiff he constructed a thirteen inch wall instead of an eight inch wall, for which he asks $25.00.

The eighth cause of action alleges the performance of extra work upon certain steps for which he asks $5.00. I should have stated that the contract provided, among other things, that the plaintiff should have the use of the old material on the ground. It was the refuse of a hotel or sanitarium that had stood on this location previously and had been burned.

The plaintiff in his reply denies all allegations in this answer of any consequence. He does, however, admit that the defendant not having finished the building, nor having it more than about one half constructed on June 20th, he did order him to leave, and as defendant was insisting on his right to come back and resume work he procured an injunction enjoining the defendant from entering upon the premises and molesting the plaintiff in the possession of the building. It was on these issues that the defendant recovered a verdict and judgment in this case. The exceptions taken in the course of the trial are so many in number, I can notice but a few of them.

### THE LAW.

It was contended by the plaintiff on the trial, and is so argued here, that the defendant did not construct this work and building so far as he had progressed, according to the contract. That he used limestone

Johnson v. Slaymaker et al.

where sandstone was stipulated for and that he used blue limestone where white limestone was stipulated for and that he used poplar lumber instead of white pine.   These are claimed in argument to have been the material deviations although many others were insisted on, but last and most important he so delayed the performance of the work that the building was not nearly completed on June 20th.   That this constituted an utter failure on the part of the defendant to perform and that so far as these several causes of action are concerned, he cannot recover at all without proving and showing substantial performance of the whole contract.   That the contract is entire and to recover anything he must have substantially performed the whole of it.   That the jury should have been so instructed and that the court should, after the verdict, have set it aside because it violates that fundamental principal of law, that the defendant must show a substantial performance of all of the conditions of the whole contract before he can recover anything on account thereof. A determination of this proposition will dispose of a large number of objections to the charge and refusal of the court to give plaintiff's requests. Whether defendants right of action under circumstances such as are disclosed here is based upon the contract or upon the value of the labor and material furnished is not important to the determination of the question whether he can recover anything in any form of action. I refer, however, on that subject briefly to the citation in the case of Goldsmith v. Hand, etc, 26 O. S., 101, where the court on page 108, cites with approval the case of Hayward v. Leonard, 7 Pick., 181, in which it is said that where "work was done and the materials furnished, but not in the manner stipulated for in the contract," one might maintain an action against the owner, "on a *quantum meruit* for his labor, and a *quantum valabent* for the materials and the proper measure of damages was the contract price of the house, deducting from it so much as the house was worth less, on account of the variations from the contract." This, I think states the rule generally understood in that class of actions even under the liberal rules of pleading of our code. We do not hold that defendant's counter-claims were not pleaded on that theory.   Doubtless, however, the essentials for that form of pleading might be more definitely stated, yet if defendant might recover at all we think his answer so far as the fourth, fifth and sixth causes of action are concerned is sufficient and we resume the subject of whether defendant has any right of action.

The most material failure to perform this contract is failure to complete it by the time named.   He claims he was delayed by plaintiff. There is but one delay shown, and that is a change in the situation of the building.   I doubt if defendant shows that this ought to have delayed him a week and as certain it ought not to have cost him $50.00 from his own testimony.   And had he pursued this contract diligently he could have made up the time lost occasioned by the change in the location, beyond that, nothing was done by plaintiff to hinder the performance of the contract.   If it were a possible thing to perform this contract within the time named, defendant ought to have done so.   He agreed that he would perform it, and although he offered some evidence to show that it was impossible to perform, we are not inclined to accept that view, but rather say having covenanted to perform, he is bound to do it, unless plaintiff prevented or unavoidable casualty intervened. United States v. Smoot, 15 Wall., 36.

Defendant was the judge when he entered into the contract of the time within which he could perform it, and if he agreed to difficult or

inconvenient obligations, a court of law cannot relieve him from the consequences of his erroneous judgment. He was bound to perform this contract within the time named in it. See on this subject: 1 Beach on Contracts, page 743; 114 Mass., 479; 22 Maine, 132.

Under the circumstances of this action time was essential to the plaintiff, who desired to open this building as a hotel and sanitarium and desired to open it before the summer season commenced. Hence the plaintiff had a right to put into his contract that stipulation and defendant the equal right of agreeing to it. And if he did not complete it on the day named, the plaintiff had a right to say to him he should not longer continue the work. I cite Phillips, etc., Co. v. Seymour, 91 U. S., 646, and read an extract from page 651: "If the builder had done a large and valuable part of the work but yet has failed to complete the whole, or any specific part of the building or structure within the time limited by his covenants, the other party has the option when that time arrives of abandoning the contract for such failure, or of permitting the party in default to go on. If he abandons the contract and notifies the other party the failing contractor cannot sue on the covenant and recover because he cannot make or prove the necessary allegation of performances on his own part. What remedy he may have in assumpsit for work and labor done, materials furnished, etc., we need not inquire here."

So that the plaintiff was justified, we hold under the circumstances of this case in stopping the defendant from completing this contract, but that does not dispose of the question we are considering. Defendant had furnished a large amount of labor and meterial, he had undertaken to, and the evidence discloses that he was following substantially the plans and specifications of this contract. That there were deviations from it, that there were imperfections in the work and that there were changes of material made, cannot, from the evidence in this case be denied. But there was all the time a construction of a building on the plan and line of the contract. The fact that the time had expired within which it was to be constructed is not sufficient to debar defendant from recovering on his counter-claim.

Let me cite here a quotation from Story on Bailments thought sufficiently authoritative to be quoted by our Supreme Court in the case of Allen v. Curels, 6 O. S., 505, and on page 508 I read this much from the the quotation: "If the work has been done and fully completed, but not according to the terms of the special contract, as if there had been a deviation from the plan or contract, or a bad or improper execution thereof, or the work has not been completed within the stipulated time, then the workman will be entitled to recover compensation, or not, according to circumstances. If the work has been so improperly or unskillfully done, that it is of no use, benefit, or value to the employer, or does not in any manner answer the intended purpose, no compensation whatsoever is recoverable. But if the work, although improperly or unskillfully done, is still of some use, benefit and value to the employer, the workman will be entitled to recover so much as the work is reasonably worth to the employer, under all the circumstances making him all due and reasonable deductions and allowances. If the work has been well and properly done, but not within the stipulated time, the workman will, in like manner, be entitled to the compensation stipulated in the contract, making to the employer all due deductions and allowances for any damage or loss occasioned by delay." I cite the case of Engle v. Jones, 2 Wall., 67 U. S., page 1, and read from the opinion the follow-

Johnson v. Slaymaker et al.

ing: "When he (the contractor) has been guilty of fraud or has willfully abandoned the work, leaving it unfinished, he cannot recover in any form of action. Where he has in good faith fulfilled, but not in the manner or not within the time prescribed by the contract, and the other party has sanctioned or accepted the work, he may recover upon common counts in assumpsit."

I might extend these quotations, but they state, in our opinion the law, and that which we design to follow, so that as far as time is concerned, that in itself, will not bar the defendant of his right to recover. Has he then so far deviated from the contracts as to prevent a recovery? The opinions of the courts in the cases we have already referred to, amply sustain it. I quote the following from the case in 7 Pick., reading from page 185 :

" We think the weight of modern authority is in favor of the action, and that upon the whole it is conformable to justice, that the party who has the possession and enjoyment of materials and labor of another shall be held to pay for them, so as in all events he shall lose nothing by the breach of the contract. If the materials are of a nature to be removed and liberty is granted to remove them and notice to that effect is given it may be otherwise. But take the case of a house or other building fixed to the soil, not built strictly according to contract, but still valuable and capable of being advantageously used or profitably rented; no absolute rejection of the building with notice to remove it from the ground; it would be a hard case indeed if the builder could recover nothing. To the same effect are the United States cases, and to the same effect, we understand, are the Ohio cases. It is argued in this connection that whether defendant substantially performed the contract was a question for the court, not the jury. We think the authorities hold, that it is a question for the jury, but if it is a question for the court, we should hold under the evidence submitted in this case, that the plaintiff has sufficiently performed that part of the contract completed by him, to entitle him to recover the value of his services and the materials, subject to certain deductions." It is true he did not follow in every respect the plans and specifications, but as to the stone work we think the evidence fairly disclosed that the plaintiff and his agents authorized by him to be at and upon the work, knew of these deviations, and if plaintiff is allowed to assert that defendant shall recover nothing he could do this only where he proved absolute ignorance of the changes made. We do not hold and it is not necessary in this case, that plaintiff ever waived his right to object to this work or to claim damages on account of the failure of defendant to follow his contract. But he has waived the right to object or rather is estopped from objecting to the defendant being paid for the material and work, because he used different material than that implied in the contract. This remark applies to the stone work and to the use of poplar instead of pine, perhaps to some other things. All these, however, are not in our judgment as a matter of law substantial deviations which would prevent defendant from recovering. They are, however, deviations which would enable plaintiff to have damages on account thereof if he could show them. Enough now is said to enable us to hold that there was no error in the refusal of plaintiff's request to charge on this point, and here we desire to say that we find no error in the refusal to charge any of the requests proposed by the plaintiff. We should say further in laying down the law on this part of the case, that while the defendant may recover the value of his materials and labor,

plaintiff has a right and should be entitled to recover in this case damages for the delay in the completion of this building.   It was undisputed. The amount of the value thereof is undisputed.   No excuse for this delay is shown by the defendant.   We cannot discover from the verdict that anything was allowed to the plaintiff on that account.   Plaintiff should further recover on account of the damages or loss if·any occasioned by his being required to complete the building.

In the next place, the damage sustained by the plaintiff in the construction of the building differently than called for by the plans, is an item which would reduce the amount to be recovered by the defendant. How much that is we cannot say from the evidence, but that is a question for the jury, and they should be instructed that from the value of the labor and material put into the building by the defendant there should be deducted—

First—Damages for the delay in the construction.

Second—Damages on account of defendants failure to construct according to plans.

Third—Damages, if any, on account of the cost to plaintiff of completing building in excess of contract price.

If these damages amount to more than would be coming to the defendant on account of the value of his labor and materials less that which he has been paid, then it would result in a verdict for the plaintiff. If it did not amount to as much as that due the defendants, the verdict should be for the defendant.   While on this point, I should say, that the question should be submitted to the jury, whether the contract for the rough floor was made, and if it was made, whether the defendant performed it, and if he performed it then he is entitled to recover not $540.00 but $425.00 the amount of cash that was to be paid.   The glass furnished was not to go to the defendant it was to go into the building.

It is possible the plaintiff makes out a case on his fourth cause of action, but we have no hesitancy in saying he does not show to exceed $50.00 damages on account of that.

As to the seventh cause of action, he does not make any case and the jury should be instructed he is entitled to recover nothing, for one very good reason that he does not show any contract in writing as required by the original contract.

They were rightly instructed as to the eighth.   Nothing was said to the jury as to the first, second and third causes of action, but we hold that the defendant makes no case under them, and will hold further that they none of them state a cause of action and the jury should be so instructed.   This will somewhat simplify the issues in this action and confine the evidence to the three causes of action on the part of the defendant and the one on the part of the plaintiff.   We have very carefully examined this charge and while we should disturb this case upon the charge with great reluctance, and should probably have been able to overlook the proposition I am about to notice, yet, as we have found it necessary to reverse this case on account of the evidence admitted and rejected, we are compelled to criticise one proposition in the charge.   It is this : "If the contractor, Slaymaker, failed to substantially comply with the contract in material matters, or the building · · ʼʼ.·ʼ substantially completed on June 20, 1896, in either case the ᵖʰᵃⁱⁿᵗⁱᶠᶠ, Johnson, had the right to take the building as it was and complete the same in accordance with the contract and recover for the necessary delay, if any, in the substantial completion of the contract.   The difference, if any, in

the value of the building, as constructed and as it ought to have been constructed by Slaymaker under the contract; (to this point little fault can be found with this charge but the words following which seem to have been put in inadvertently make all the difference imaginable with the proposition) and defendant, Slaymaker, would be entitled to claim the contract price less the difference, if any, in the value of the building, as constructed and as it ought to have been construed by Slaymaker under the contract." It is manifest, I think, without argument, that these two cannot both recover the same measure of damages upon the same state of facts.

It is urged that the contract is silent on the subject as to who should furnish estimates and hence the court erred in saying defendant should furnish them. As the parties have not agreed upon anybody to make estimates either in the contract or outside of it, plaintiff cannot be heard to say, that he should never be required to pay because estimates were not furnished. It is as well his fault as the fault of defendants that no person was agreed upon to furnish the estimates. He is required to pay monthly and upon estimates. As no person has been agreed upon to make those estimates, it must follow that the estimates themselves must be agreed upon, and it may well be that the estimate being a mere statement of account, a statement of materials and labor, should properly come from the defendant to furnish the same and be submitted to the plaintiff for his examination and correction, if need be, and when agreed upon, then, 85 per cent. of the amount thereof to be paid. It is a serious defect in this contract, but it does not avoid the contract nor render nugatory any of the obligations into which the parties have entered.

We think substantially the court submitted this case to the jury correctly, but as we have previously indicated on a future trial the rights of the parties could be more definitely defined and will be somewhat limited by eliminating from the case, at least all these causes of action except the three, the fourth, fifth and sixth in the defendants answer.

As we are required by the motion for a new trial to pass upon the weight of the evidence, we think this verdict is too large for the defendant.

Defendant alleges in his counter-claim that he furnished material to the amount of $10,176.00, that under the special contract he would be entitled to recover $425.00 and for change in location we suggest that $50.00 would be ample. This would make the maximum limit of these three items $10,651.00. He was paid $6,516.00. This would leave not to exceed $4,135.00. The plaintiff is certainly entitled to recover for the delay in the construction of the building for the period of not less than four months under his proof, an amount which we do not fix, but which the evidence discloses and which should be passed upon by the jury.

The record satifies us that the most serious defects in the construction of this building were not the change in the stone or mortar or door frames but in the general manner of doing the work. The defects in this building are not really denied by the defendant and the plaintiff's evidence overwhelmingly shows most serious defects. Competent witnesses put the value of those at $2,000.00 and if those defects are there, one cannot very well see how the damages could be much less. We, however, do not undertake to fix or point out the amount of that damage but we say that the question should be submitted to the jury, and that whatever amount they find, together with the value of the delay should be deducted from the amount found due the defendant for labor and

material, and as we have before said also the excess in cost of construction beyond the contract price, if any there be. This brings us to the evidence in the case excluded and admitted over the exceptions of plaintiff.

The question on page 52 asked of James Shank, " How long would it have taken you, Mr. Shank, to have taken one foot off of the door and brought it down so you wouldn't have had to raise your windows," we think should have been permitted.

The question on page 54 " In what manner was it changed to take out that foot elevation," should have been permitted.

" What was the position of floors after Slaymaker left " on page 163 should have been permitted.

" What was the conversation, and where was it, and when was it," (the conversation called for was between Johnson and Slaymaker while Slaymaker was at work upon the building, with reference to mortar), and should have been permitted.

" How many carpenters did Mr. Slaymaker have upon the work before he quit the job," and " after Slaymaker was off of the job how many carpenters did Captain Johnson employ to complete this building," are the next questions, and we think both of these questions should have been permitted; the first of which was given to show how Mr. Slaymaker was carrying on his work, and the second was to show that Johnson was doing it expeditiously.

He was also claiming damages for delay in the work; claiming damages for the use of the building for several months—that he had been kept out of it improperly. He should show he has expeditiously completed the building as far as is possible to do because he couldn't add to his own damages by unnecessarily delaying the work.

In the testimony of Frank Ennis on page 232 " did you have a conversation with Slaymaker at the time the brick was going into this building about the character and kind of brick that was going in; " that should have been answered.

On page 250 speaking of cracks, " what in your judgment or in your opinion caused that crack," should have been answered. The witness showed that he was a competent builder, and if a competent builder it was a question that might well be put to a builder and questions put upon the same line, were permitted when defendants witnesses were upon the stand.

On page 251, " what would you say in your opinion was the cause of the settling at that place, I mean the crack at that place," is the same question and should have been answered.

" What in your opinion was the cause of the cracks on the inside." That should have been answered for the same reason.

On page 298, a witness was asked this question : " What was the result, if any, upon the ceiling of the south porch, by cutting them down that way." There was considerable more of this testimony which showed its application and we think should have been allowed.

In the testimony of H. J. Johnson, pages 393, 394 and 395, are questions and answers that after being given were ruled out.

" Take the south side " was a question that follows after other questions leading up to it. Answer : " On the south side there is a bulge in the wall as near as I can tell with my eyes, I didn't measure it, there is a bulge I examined it inside and it has went away from the wood

work, went away from the baseboard probably half an inch;" that was ruled out.

On page 394 "what if anything do you know about the porch" "being too high"—Answer: "Well I don't know, it is a foot too high, the windows are a foot too high." And the question "do you know anything about the height of the windows from the water table," and the answer, "The cap, I measured, it was ten feet and an inch, I believe, and I looked on the plans and found it should be nine." I should say that that last answer is correct. The court ruled out only the last part of the answer "I looked on the plans and found it should be nine."

The same complaint is made that on page 403 and 404 Johnson was asked as to the rental value of the building between certain dates but this was excluded. The proper question, should have been as to the value of the use of this building during these months if it had been completed according to and within the time of the contact.

In the testimony of Charles Wolfe this question was asked; "Were those window frames made for check sash." There is a claim made that the plans were for checked sash, and it is the purpose to show that these were not. If the witness would so answer, this would have been competent.

This question and answer we think was competent, "Will you describe as fully as you can the cracks you noticed there," and the answer is "the wall has the appearance of sliding out or tipping out, whatever you would call it, drawing the brick with it makes oblique cracks of the brick-work in the window frame in the tower."

Again A. Foster was asked the question "can you tell the jury what caused those cracks in the walls of the building," which he seems to have been competent to answer, and of him was asked the hypothetical question on page 529 and we think it was proper and he should have been permitted to answer both.

On page 651, June was asked, "from your experience what do you say as to its being possible to construct a building of the size, weight and character of the Oak Ridge Sanitarium building and of the material of which this building is constructed upon earth supports to the foundation without the building cracking more or less where it is built within six months from the commencement of the work." We think the witness was competent to answer that question. If there is the qualification as to whether it could have been done without having it crack it was competent.

It was objected that a witness was permitted on the part of defendant to give conversations with Johnson, Cobb and Johnson's son. We think along that line there was evidence enough to permit the conversation with Cobb and with Johnson's son to go to the jury. There is, however, in that connection a matter which should be noticed. Cobb was placed upon the witness stand and asked if he had authority to do certain things about this work; we think Cobb should have been permitted to testify as to his authority, we can see no reason why he would not be allowed to state what authority he had, if any. Of course that goes in with all of the rest of the evidence in the case showing what he did do there. A witness was asked to state how much it would cost if white mortar was used instead of brown mortar. We think that was competent as showing damages to the plaintiff on account of deviations from the plans and specification.

There is a question, on page 387, Slaymaker was permitted to state that he was not able to pay for materials in the building as fast as he procured them or as they were needed. We cannot see the competency of that.

On page 1139 it was sought to show by Cobb that he had authority to do certain things. On page 1142 it was sought to show by Cobb that the work had been completed by Johnson according to the plans and specifications. We think it was competent to show that but perhaps that testimony was improper on account of its leading and suggestive character.

It is urged that the court refused to permit Cobb to tell the jury the value of material and labor necessary to complete the building. There are two questions on that subject: One was the value and one was the cost. The court permitted him to answer what the cost was but did not permit him to state the values. We think the one referring to value the proper one but there was no error in that to the prejudice to the plaintiff, for the answer to the other gave him what he was after.

For these errors this judgment is reversed.

*Garver & Garver* and *S. H. Holding*, attorneys for plaintiff in error.

*Bartlett & Wilson, Finch & Dewey* and *Garfield & Garfield*, attorneys for defendants in error.