**PAGENKOPF et al. v. PHELPS et al.
(No. 2156.)**

(Court of Civil Appeals of Texas. Amarillo. May 30, 1923. Rehearing Denied June 30, 1923.)

1. **Mines and minerals ⬅➡109—Contract requirements for casing of oil well and furnishing tanks held waived by agreement.**

In a suit to recover the contract price for drilling an oil well, the contract providing that plaintiffs were to case the well and furnish two 500-barrel tanks, defendants were not entitled to a peremptory instruction on the ground that the well was not cased, nor both tanks furnished, such requirements having been waived by agreement at the time plaintiffs stopped drilling.

2. **Mines and minerals ⬅➡109—Warranties as to production of oil will not be implied in construing contracts for drilling.**

The courts in construing contracts for the drilling of oil wells are not disposed to imply warranties as to the production or the quantity and quality thereof, such matter not being within the driller's power to control, and unless the contract by express terms or clear implication makes payment of his compensation dependent upon his securing production, the driller is entitled to his pay when he has drilled the well to the depth required by the contract; provided that, if oil is encountered in the drilling, he is bound to take proper action to make the well productive.

3. **Mines and minerals ⬅➡109—Drillers' failure to protect oil sand no defense in action for contract price where due to owner's directions.**

Where the failure of the drillers of an oil well to protect oil sand is due to the instruction of owners of the well, such failure presents no defense to drillers' right to recover the contract price for drilling.

4. **Mines and minerals ⬅➡109—Acceptance of oil well upon completion held for jury.**

In an action by the plaintiffs to recover the contract price for drilling an oil well, evidence *held* to warrant submission to the jury of acceptance by the owner when the well had reached the contract depth, although oil had not been struck in producing quantity.

On Motion for Rehearing.

5. **Mines and minerals ⬅➡109—Direction to drill through oil sand held not to excuse taking of proper precautions for setting of casing.**

In a drillers' action to recover the contract price for drilling an oil well, that one of the members of the joint-stock association owning the lease directed plaintiffs to drill through certain oil sand reached, and to make the well deeper, would not excuse plaintiffs from the consequences of not having taken proper precautions, before reaching the sand, for the setting of the casing, in the event it should be desired to bring in a well on such sand.

6. **Work and labor ⬅➡12—No recovery on quantum meruit where defective performance in drilling oil sand accepted.**

Acceptance of defective performance in drilling oil sand does not warrant a recovery on quantum meruit instead of contract.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by T. L. Phelps and another against H. A. Pagenkopf and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Smoot & Smoot, of Wichita Falls, for appellants.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellees.

BOYCE, J. Appellees, T. L. and H. E. Phelps brought this suit against H. A. Pagenkopf and associates composing a joint-stock association, known as the Southern States Oil Company, to recover a balance alleged to be due on a contract to drill an oil well. By this contract plaintiffs agreed "to drill a well for oil," on a lease owned by defendants. We quote the following provisions of the contract as being material to a consideration of the questions presented:

"(2) It is mutually agreed that the above drilling is to be a turn-key job. Party of the second part (T. L. and H. E. Phelps) furnishing all material for the construction of the derrick and to construct the same; to furnish all water, oil, etc., for the drilling of the well, as set out in this contract; to furnish to first party two five hundred barrel storage tanks and all flow lines and pipes necessary to take the oil from the well to the tanks, and to swab the well for twenty-four hours, in the event the well does not flow properly after the same has been brought in.

"(3) The party of the second part agrees to drill the above well to the oil sand known as

the Burk-Waggoner oil sand and to bring in the well as herein set out, not exceeding a depth of 1,800 feet. It is agreed that the party of the second part is to use a rotary drilling rig for the drilling of the well above but agrees to bring in said well with a star rig at the option of the party of the first part. * * *

"(5) It is agreed herein that the party of the second part is to properly case the well with 6⅝ inch casing and of the weight of twenty pounds per foot and to cement the same, or at the option of the first party to fix as first party may direct."

The consideration agreed to be paid for such work was the sum of $25,000, payable as follows:

"$5,000 when the well is drilled to the depth of 500 feet; $5,000 when the well is drilled to the depth of 1,000 feet; $5,000 when the well has been drilled to the depth of 1,500 feet; and the balance of $10,000 when the well has been completed as herein specified and the contract has been fully completed."

Plaintiffs alleged that they drilled the well to a depth of 1,805 feet, in accordance with the contract; that no oil or gas was found in paying quantities; that defendants directed plaintiffs to set two joints of casing at top of well and cover up the top, which plaintiffs did, and thereupon defendants accepted said well as completed under the terms of the contract; that defendants informed plaintiffs that they need not furnish one of the tanks nor put in the 1,760 feet of casing, but might retain the same, crediting plaintiffs with the value thereof; that defendants are entitled to a credit of $2,512 on this account; that defendants had paid plaintiffs $15,000 on the contract and therefore owe a balance of $7,488, which amount they seek to recover.

The defendants deny that the well was drilled to the required depth, and that plaintiffs had otherwise complied with their contract. They further allege that, if said well was drilled to a depth of 1,800 feet, the defendants did the work in such a careless and negligent manner as to make the well, not only of no value, but a positive damage to the lease; that defendants had passed through the oil sand and allowed salt water to enter it, and that by failing to case the well and take proper steps to preserve the hole caused the well to be lost by caving. The defendants sought to recover the $15,000 paid on the contract and a large amount of damages in addition thereto.

The jury, in answer to special issues, found the following facts: (1) That plaintiffs drilled the well in controversy to a depth of 1,800 feet; (2) that plaintiffs substantially complied with the terms of the contract for the drilling of the well; (3) that the defendants accepted the well as completed in accordance with the terms of the contract; (4) that the defendants, after plaintiffs had ceased drilling the well, agreed to pay the balance due under the contract; (5) that the reasonable cash market value of the 500-barrel tank and 1,760 feet of casing, above referred to, was the sum of $2,930.60; (6) that Pagenkopf directed plaintiffs to drill through the oil sand encountered at 1,625 feet; (7) that the plaintiffs did not exercise ordinary care and skill in drilling the well in question in protecting all sands found therein and in finishing up said well so as to secure any oil it might have in it; (8) that plaintiffs were not negligent and careless in attempting to bring in a well from the Burk-Waggoner sand on the defendants' lease, in accordance with their contract. On this verdict the trial court rendered judgment in plaintiffs' favor for the $7,069.40.

In connection with the statement of the findings of the jury, we make this additional statement of the details of the facts: The evidence shows that, in the course of the drilling, an oil sand was encountered and drilling stopped until Pagenkopf could reach the well, and give directions. Plaintiffs' testimony is to the effect that this sand was the true Burk-Waggoner sand and was reached at a depth of about 1,625 feet. One of the plaintiffs testified that in his opinion a producing well could have been brought in on this sand; that Pagenkopf examined the cuttings and said that "it didn't look good enough for him;" that he wanted "a big well" and directed the plaintiffs to continue and go on to the 1,800 foot depth unless "we knew that we had a good well;" that acting under these instructions he drilled through this sand and never encountered another. Pagenkopf's testimony was to the effect that there were two sands in the Burk-Waggoner formation: A "false" or "dip" sand, which in this vicinity was encountered at a depth of about 1,560 feet, and a true sand, which was from 1,600 to 1,630 feet; that the false sand was encountered in this well at about 1,575 feet; that he was notified, came out to the well, examined it and instructed the driller to go through this sand and proceed carefully thereafter for the true sand. His theory is that the plaintiffs did not go to the 1,800-foot depth and carelessly drilled through the true sand and ruined the chance of making a well out of it. The evidence shows that thereafter another well was drilled, 20 feet from this well, and a good oil well brought in. The log of this second well disclosed an oil sand 5 feet in thickness, encountered at 1,581 feet, a good sand encountered at 1,612 feet, with the bottom of hole in slate at 1,634 feet. One of the plaintiffs testified that when a depth of 1,805 feet was reached he informed defendant Pagenkopf that he had completed the well; that Pagenkopf told him to "go ahead and tear down; that my job was completed;" that Pagenkopf came out to the well as the drill stem was

being taken out of the well, made some measurements, and seemed to be satisfied that "the contract was completed in accordance with the agreement;" that Pagenkopf instructed the defendant witness to put in two joints of casing at the top so as to make it appear that there was a whole string of casing in the well; that Pagenkopf said it was not necessary to put in the other casing and furnish the extra tank; that Pagenkopf said that "they were figuring on selling another lease right close to there and that he would have my money in the next few days. * * * He said that he was trying to get his money out of that lease, and that he would put out the report that we had our casing set on the sand and that we were waiting for a star machine to drill the well in with." Part of this testimony is contradicted by Pagenkopf, who denies that he expressed satisfaction with the completion of the job and the conversation about selling leases. He admits that he told Phelps to set two joints of the casing; his explanation of this matter is that he was satisfied there was oil at this place and did not want it to appear that the well was abandoned, which would condemn the territory as dry. He admits that he made some equivocal statements as to payment at this time and afterward for "stalling" purposes. Pagenkopf further testified that he himself filled the well with mud for the purpose of preserving it and preventing it from caving. The well, at the time it was being drilled, was from one-third to three-fourths miles distant from any producing well.

[1] There was no error in refusing to submit the first and second issues requested by appellants. These issues required a finding as to whether the defendants completed the well by drilling it to the Burk-Waggoner sand or to 1,800 feet, casing it, finishing it up as a turn-key job, and putting in two 500-barrel tanks. There was no contention that the well had been cased, except as stated, and that two tanks were furnished. The answer to these issues would necessarily have been in the negative, and defendants were entitled to a peremptory instruction, as contended under the fourth proposition, if the failure to case the well and furnish the 500-barrel tanks necessarily precluded a recovery. We do not think defendants were entitled to a peremptory instruction on this ground. The plaintiffs' pleading and proof sustain the conclusion that these requirements of the contract were waived by the agreement at the time plaintiffs stopped drilling.

[2] It is contended, also, that the defendants were entitled to a peremptory instruction on the ground that the contract bound plaintiff to bring in a producing well and that having failed to do this they cannot recover on the contract. The courts in construing contracts for the drilling of wells, are not disposed to imply warranties as to production or the quantity and quality thereof. The presence, the quantity, and quality of the substance sought to be obtained by the drilling is a matter not within the driller's power to control, and unless the contract, by express terms or clear implication, makes payment of his compensation dependent upon securing production, the driller will be held to be entitled to his pay when he has drilled the well to the depth required by the contract; provided that, if water or oil, whatever is being sought, is encountered in the drilling, then the driller is bound to take proper action to make the well productive. Butler v. Davis, 119 Wis. 166, 96 N. W. 561; Poland v. Thomaston Brick Co., 100 Me. 133, 60 Atl. 795; Norbeck v. Mallock, 26 S. D. 54, 127 N. W. 471; Stewart v. Weaver, 12 Ala. 538; Skalsky v. Johnson, 138 Minn. 275, 164 N. W. 978, L. R. A. 1918A, 1084, and notes; Blum v. Brown, 11 Tex. Civ. App. 463, 33 S. W. 145; Cox v. Markham, 39 Tex. Civ. App. 637, 87 S. W. 1163. While in the contract we are considering there is no express warranty of production of oil, it must be admitted that the contract was drawn on the assumption that oil would be found and the driller in that event at least bound himself to bring in the well. The only alternative is that suggested by the expression "not to exceed a depth of 1,800 feet." The contract was awkwardly drawn and its meaning not entirely clear. The action of the parties, taken at the time the well was being drilled, and when work thereon stopped, indicates that they construed the contract to mean that drilling to 1,800 feet, if oil was not found before that depth was reached, fulfilled the contract. This was the construction placed on the contract by the trial court, and we are not prepared to say that it was erroneous.

[3] The defendants moved for judgment on the seventh finding of the jury, as hereinbefore set out, and present error on the refusal of the court to grant such motion. We do not think the court could have rendered judgment for defendants on this finding. It appears to us to be in conflict with the eighth finding. It is also either in conflict with or controlled by the sixth finding. The undisputed evidence shows that the only oil producing sand encountered in the well was that found at about 1,625 feet. Defendant Pagenkopf was at the time, according to the jury's finding, on the ground, and directed the plaintiffs to drill through this sand. This direction and plaintiffs' compliance therewith would excuse them from the obligation to bring in the well from this sand. The real fight in the case was waged on this issue, and it was decided in plaintiffs' favor by the jury. If the plaintiffs' failure to protect this sand was due to the instructions of the defendant Pagenkopf to drill through it, then such failure presents no defense to plaintiffs' right of recovery. The jury's

further finding of the acceptance of the well by Pagenkopf stands also in the way of. the rendition of a judgment in defendants' favor on the finding under discussion. The authorities on the effect of acceptance of a defective performance of a contract are not very harmonious. It is quite generally said that defects in performance are waived by acceptance with knowledge of the defects; some of the authorities apply the principles of estoppel to the determination of the rights of the parties in such stipulation. Williston, in his work on Contracts, § 724, says:

"If the defect in the work is or ought to be known, its acceptance will impose a duty to pay for it, and if no protest or complaint of the quality of the. work is .promptly made will also discharge .any right of damages for defects in the performance."

In this connection see, also, the following authorities: Butterworth v. Kinsey, 14 Tex. 495, 501; Berry v. Burnett, 23 Tex. Civ. App. 558, 56 S. W. 769; Meyer v. Martin (Tex. Civ. App.) 50 S. W. 470; Phillips Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; 6 R. C. L. 990; Page on Contracts, §§ 3064, 3071.

[4] The defendants, according to the jury's findings, knew that plaintiffs had passed through the only oil sand capable of producing a well and, while plaintiffs were still on the ground, made no complaint as to such matter and no demand that they attempt to bring in a well on that sand. It may be that after having instructed plaintiffs to drill through such sand the defendants would have no right to require the plaintiffs to attempt to return to it and develop a well therefrom. Defendants expressed apparent satisfaction with the work, requesting the plaintiffs, in completion thereof, to set two joints of casing. The evidence, viewed from plaintiffs' testimony, suggests that Pagenkopf did not care to have a light producer brought in, but preferred the appearance of the possibility of a "big well." We think the evidence warranted the submission of the issue of acceptance, and that the finding on such issue and the sixth issue, already referred to, entitled plaintiffs to judgment, notwithstanding the seventh finding.

We do not think the facts warranted the submission of an issue of substantial compliance, but findings on other issues are sufficient to sustain the judgment, and the finding on this issue may be disregarded.

We have not attempted to discuss appellant's propositions separately or in the order stated; but, if we are correct in the conclusions announced, all of the propositions presented should be overruled and the judgment of the trial court affirmed.

## On Motion for Rehearing.

[5] We were, we believe, in error in the statement in the opinion that there is a neces-sary conflict between the seventh and eighth findings of the jury, as set out in the original opinion, and accordingly withdraw that statement. We are also of the opinion that we were in error in the conclusion that the seventh finding is in conflict with or to be controlled by the sixth finding. The seventh finding was probably based on testimony that it was customary for a driller, in known formations, to "feel ahead with a rat tail," a drill of smaller dimensions, so that if this testing should discover an oil sand a shoulder might be left above it for setting the casing. This practice was not followed in this instance. The Burk-Waggoner sand was encountered in this well at 1,625 feet or less. A depth of 1,635 feet had been reached, according to another finding of the jury not stated in our original opinion, at the time when Pagenkopf directed the plaintiffs to drill on through such sand. The log of the offset well shows that the sand extended only to a depth of 1,634 feet or less. So that it is apparent that plaintiffs were already into and nearly, if not entirely, through this sand at the time Pagenkopf directed them to drill on through it. This direction then would not excuse the plaintiffs from the consequences of not having taken proper precautions before reaching the sand for the setting of casing, in the event it should be desired to bring in a well on such sand.

So that we have reached the conclusion that the judgment may be sustained, if at all, only on the finding of defendant's acceptance of the well. The law in reference to this phase of the case is not as clear as it might be. One essential element to the binding of a party to the contract by an acceptance of performance not fulfilling the terms thereof, is knowledge, at the time of the acceptance, of the defect in the performance. That element was not submitted here, but the evidence was amply sufficient to support a finding that Pagenkopf, at the time of the completion of the well, knew how it had been drilled and that this particular sand had been passed through in the manner stated. But the appellant's chief insistence is that acceptance only operates as a waiver of strict compliance with the contract when the performance accepted was of some benefit to the party accepting; that the doctrine is that one cannot accept the benefit of the other man's performance and refuse to pay because of defective performance to which he made no objection on acceptance and in this connection states as a basis for the application of this proposition that the well as accepted by Pagenkopf was a junked and worthless hole. But the evidence does not show that the hole was worthless at the time Pagenkopf accepted it. He evidently did not think so at the time, as he had casing set at the top and himself filled it with mud to preserve it from caving. The failure to

leave an offset above the sand for the setting of the casing and the manner of plaintiffs' drilling through the sand may have had nothing to do with the ultimate loss of the well. The court and jury no doubt concluded that this well, at the time Pagenkopf accepted it, could have still been brought in on the Burk-Waggoner sand that Pagenkopf so desired. This is to be inferred from the jury's finding that the well was drilled in substantial compliance with the contract.

[6] The appellants also suggest that in case of acceptance of defective performance the recovery should be on quantum meruit instead of on the contract. We do not understand the authorities to so hold. See authorities cited in original opinion.

The motion for rehearing is overruled.